# NO. 12-13-00333-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *WILBERT WALKER,*<br>*APPELLANT* | *§* | *APPEAL FROM THE 349TH* |
| *V.* | *§* | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | *§* | *HOUSTON COUNTY, TEXAS* |

## *OPINION*

Wilbert Walker appeals his conviction for possession of a controlled substance. He raises four issues on appeal. We affirm.

## BACKGROUND

A Houston County grand jury returned an indictment against Appellant that alleged he committed the offense of possession of a controlled substance, namely, cocaine. The indictment further alleged that Appellant was an habitual offender. Appellant pleaded "not guilty," and a jury trial was held. The jury found Appellant guilty, found the State's allegations that Appellant was an habitual offender "true," and assessed punishment at seventy-five years of imprisonment. This appeal followed.

## POTENTIAL JUROR STATEMENT

In his first issue, Appellant contends that the trial court erred by refusing to quash the jury panel after a potential juror made a remark relating to his being incarcerated in the past. Because the juror's remark was made before the entire jury panel, Appellant contends he was denied his right to an impartial jury.

## Standard of Review and Applicable Law

We review a trial court's denial of a motion to quash the venire for an abuse of discretion. *See* **Mendoza v. State**, 552 S.W.2d 444, 447 (Tex. Crim. App. 1977). An abuse of discretion occurs when a trial court's decision is so clearly wrong that it lies outside the zone of reasonable disagreement. *See* **Gonzalez v. State**, 117 S.W.3d 831, 839 (Tex. Crim. App. 2003).

Among the most precious rights afforded an accused is the right to be tried before an impartial jury with the presumption of innocence fully intact and free of prejudice. **Culverson v. State**, 755 S.W.2d 856, 859 (Tex. Crim. App. 1988) (citations omitted). The presumption of innocence is a fundamental right, and "its enforcement lies at the foundation of the administration of our criminal law." **Taylor v. Kentucky**, 436 U.S. 478, 483, 98 S. Ct. 1930, 1933, 56 L. Ed. 2d 468 (1978); **Ex parte Clark**, 545 S.W.2d 175, 177 (Tex. Crim. App. 1977).

The jury selection process is designed to insure that an intelligent, alert, disinterested, impartial, and truthful jury will perform the duty assigned to it. **Armstrong v. State**, 897 S.W.2d 361, 363 (Tex. Crim. App. 1995). An impartial jury is one that does not favor a party or individual due to the emotions of the human mind, heart, or affections. *See* **Durrough v. State**, 562 S.W.2d 488, 490 (Tex. Crim. App. 1978).

When a potential juror makes a possibly prejudicial statement in front of the entire panel, the appellant must show harm by demonstrating that (1) other members of the panel heard the remark, (2) potential jurors who heard the remark were influenced to the prejudice of the appellant, and (3) the juror in question or some other juror who may have had a similar opinion was forced upon the appellant. *See* **Callins v. State**, 780 S.W.2d 176, 188 (Tex. Crim. App. 1989); **Sledge v. State**, No. 12-11-00026-CR, 2012 WL 3104392, at *6 (Tex. App.—Tyler 2012, pet. ref'd) (mem. op., not designated for publication).

## Jury Selection

During the beginning of jury selection, the trial court asked the members of the panel who knew or thought they knew Appellant to identify themselves. After they were identified, the trial court questioned each potential juror regarding their relationship with Appellant and whether their relationship would affect his or her ability to be fair. During this phase of questioning, potential juror number four testified that she remembered Appellant from twenty years ago. When asked whether she could be fair, she stated, "Well, I really don't know. He was in and out, you know, locked up and I don't—we were in business and when he wasn't locked up, you know, he traded

with us." The trial court gave no instruction to disregard potential juror number four's statement. Thereafter, the trial court discussed the burden of proof, the presumption of innocence, and the defendant's right not to testify.

In its voir dire, the prosecutor discussed mens rea, possession, witness credibility, drug dealers, drug users, the burden of proof, and factors applicable to determining punishment. The prosecutor informed the panel that the jurors selected to serve on the jury would determine Appellant's punishment if he was found guilty. The following discourse then took place:

> Prosecutor: What's something you would want to know before you decide how much punishment he should get?
>
> . . . .
>
> Potential Juror: I would like to know his criminal history.
>
> Prosecutor: Bingo. Everybody wants to know what their criminal history is.
>
> > Ladies and gentlemen, that may or may not be admissible in the guilt/innocence phase. And why not? Because you don't—you don't want to look at what he's done and say, "Well, since he's done all that, he probably did this."
>
> Potential Juror: Right.
>
> Prosecutor: The only issue at the guilt/innocence phase is did he do this? Have we proved to you beyond a reasonable doubt that on December 14, 2011, he was in possession of cocaine?
>
> > That is the only issue. Then and only then, if you decide he was, you go to his punishment. And then you get to hear, if there is any—I'm not implying that there is, but then and only then do you get to hear criminal history. . . .

At no point during the State's voir dire did anyone refer to potential juror number four's comment about Appellant's being "in and out of jail," or mention that he had a criminal history.

Defense counsel first discussed the presumption of innocence in his voir dire. He asked the panel who believed Appellant was innocent when they walked into the courtroom. The record indicates several potential jurors raised their cards. It is unclear how many potential jurors answered defense counsel's question affirmatively, but several explained their reasoning upon further questioning. Defense counsel also discussed mens rea, the Dallas County District Attorney's Office and the innocence project, the potential jurors' opinions regarding the imprisonment of innocent persons, the burden of proof, and the credibility of police officer testimony. At no point during defense counsel's voir dire, did anyone mention Appellant's criminal history.

3

**Discussion**

A statement that makes a jury panel aware of a defendant's prior criminal history is inherently prejudicial. *Abdnor v. State*, 871 S.W.2d 726, 738 (Tex. Crim. App. 1994) (admission of extraneous offenses prejudices defendant because of jury's "natural inclination to infer guilt" to charged offense). But the constitutional right to an impartial jury is not violated by every error. *Jones v. State*, 982 S.W.2d 386, 391 (Tex. Crim. App. 1998). This is because there is no presumption that a defendant is denied due process and an impartial jury when a jury panel has been exposed to his criminal history. *See Murphy v. Florida*, 421 U.S. 794, 799-800, 95 S. Ct. 2031, 2036, 44 L. Ed. 2d 589 (1975) (holding that qualified jurors need not be "totally ignorant," and that "to hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard.") (citations omitted).

Here, the potential juror's statement illustrated that Appellant's criminal history was remote (her knowledge was based on business dealings from twenty years ago). The record does not show that the potential jurors who heard that Appellant had been "in and out of jail" were influenced to Appellant's prejudice. *See Callins*, 780 S.W.2d at 188. Moreover, the record does not show that potential juror number four or some other potential juror who may have shared a similar opinion was forced upon Appellant. *See id.* To the contrary, the trial court granted all but one of defense counsel's challenges for cause, and among those granted challenges was potential juror number four.

Here, potential juror number four's statement did not amount to a structural error, negating a showing of harm. *See Schmutz v. State*, 440 S.W.3d 29, 35 (Tex. Crim. App. 2014) ("A structural error affects the framework within which the trial proceeds[.]"). Only a narrow line of cases have reversed a conviction based on structural error, and we are aware of none that have reversed due to a potential juror's statement during jury selection. *See Johnson v. U.S.*, 520 U.S. 461, 468-69, 117 S. Ct. 1544, 1549-50, 137 L. Ed. 2d 718 (1997) (listing cases involving structural error: total deprivation of right to counsel, lack of impartial trial judge, unlawful exclusion of grand jurors of defendant's race, denial of right to self-representation at trial, right to public trial, erroneous reasonable-doubt instruction to jury) (citations omitted); *Gonzales v. State*, 994 S.W.2d 170, 171 n.4 (Tex. Crim. App. 1999). Thus, there must be a showing of harm in

4

order to determine whether Appellant was deprived of his right to trial by a fair and impartial jury. *See Callins*, 780 S.W.2d at 188.

Appellant did not show, as required by *Callins*, that he was harmed by potential juror number four's statement. *See id.* We conclude that the trial court did not abuse its discretion by denying trial counsel's motion to quash the jury panel. *See Mendoza*, 552 S.W.2d at 447. Accordingly, we overrule Appellant's first issue.

## PRESERVATION OF ERROR

In his second issue, Appellant contends that the trial court erred by admitting cocaine from an extraneous offense during the punishment phase of trial. The State contends that the error was not properly preserved.

### Applicable Law

Error preservation is a threshold issue because challenges to the propriety of trial court rulings must be preserved for appeal. *Moore v. State*, 371 S.W.3d 221, 225 (Tex. Crim. App. 2012); *Mays v. State*, 285 S.W.3d 884, 889 (Tex. Crim. App. 2009) (holding that error preservation is "systemic requirement"). Failure to present a timely and specific request, objection, or motion to the trial court for a ruling results in forfeiture of the right to present the claim on appeal. *See* TEX. R. APP. P. 33.1; *Mendez v. State*, 138 S.W.3d 334, 341-42 (Tex. Crim. App. 2004). The requirement that complaints be raised in the trial court (1) ensures that the trial court will have an opportunity to prevent or correct errors, thereby eliminating the need for a costly and time-consuming appeal and retrial; (2) guarantees that opposing counsel will have a fair opportunity to respond to complaints; and (3) promotes the orderly and effective presentation of the case to the trier of fact. *Gillenwaters v. State*, 205 S.W.3d 534, 537 (Tex. Crim. App. 2006); *Stinecipher v. State*, 438 S.W.3d 155, 159 (Tex. App.—Tyler 2014, no pet.).

In determining whether an objection is sufficiently clear to provide an opportunity to correct the purported error, the appellate court should consider the context in which the complaint was made and the parties' understanding of the complaint at the time. *Ford v. State*, 305 S.W.3d 530, 533 (Tex. Crim. App. 2009). Moreover, an issue on appeal must comport with the objection made at trial, i.e., an objection stating one legal basis may not be used to support a different legal theory on appeal. *See Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012); *Rezac v. State*, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990). When an appellant's trial objection does not

comport with his argument on appeal, he has forfeited his right to raise the issue. *See Clark*, 365 S.W.3d at 339; *Goff v. State*, 931 S.W.2d 537, 551 (Tex. Crim. App. 1996).

**Discussion**

In his brief, Appellant argues that the trial court erred in admitting cocaine from an extraneous offense during the punishment phase of the trial because the State did not prove beyond a reasonable doubt that he committed the offense. But at trial, defense counsel's objection to the admission of the cocaine was "I'm going to object to chain of custody and for authentication."

At the time of defense counsel's objection, testimony regarding Appellant's involvement in the controlled buy of the cocaine had already been presented. At no point did defense counsel lodge an objection regarding the State's burden of proof as it pertains to the admission of extraneous offense evidence. It cannot be said that the State or the trial court understood Appellant's objection was related to the State's burden of proof for extraneous offenses during the punishment phase of trial. *See Ford*, 305 S.W.3d at 533.

Appellant's argument on appeal does not comport with his objection at trial. *See Clark*, 365 S.W.3d at 339. Thus, he has forfeited his right to raise this issue on appeal. *See* TEX. R. APP. P. 33.1; *Goff*, 931 S.W.2d at 551. Accordingly, we overrule Appellant's second issue.

MOTION TO SUPPRESS

In his third issue, Appellant contends that the trial court erred by denying his motion to suppress. He argues, "[T]he search that disclosed the cocaine was constitutionally unreasonable."

**Standard of Review and Applicable Law**

Appellate review of a trial court's ruling on a motion to suppress is ordinarily limited to the record at the time of the suppression hearing. *Turrubiate v. State*, 399 S.W.3d 147, 150-51 (Tex. Crim. App. 2013). But when, as here, the suppression issue has been consensually re-litigated by the parties during trial, our review may include evidence adduced at trial. *Id*. at 151.

A warrantless search is "per se unreasonable subject only to specifically established and well-delineated exceptions." *See Rayford v. State*, 125 S.W.3d 521, 528 (Tex. Crim. App. 2003). A search conducted with the consent of the suspect is one such exception, as long as it is voluntary. *Id.*

6

Voluntariness is determined by analyzing the totality of the circumstances of the situation from the view of an objectively reasonable person, without regard for the subjective thoughts or intents of either the officer or the citizen. *Tucker v. State*, 369 S.W.3d 179, 185 (Tex. Crim. App. 2012); *Meekins v. State*, 340 S.W.3d 454, 459 (Tex. Crim. App. 2011). In determining voluntariness, the ultimate question is whether the person's "will has been overborn and his capacity for self-determination critically impaired," such that his consent to search must have been involuntary. *Id.*

The voluntariness of a person's consent is a question of fact that the state must prove by clear and convincing evidence. *Valtierra v. State*, 310 S.W.3d 442, 448 (Tex. Crim. App. 2010). A trial court's finding of voluntary consent is reviewed for abuse of discretion, and must be accepted on appeal unless it is clearly erroneous. *Meekins*, 340 S.W.3d at 460.

## The Evidence

Officer Alfrado Fajardo testified during the hearing on Appellant's motion to suppress and during trial. His testimony at trial showed that it was after 11:00 p.m. when he conducted a traffic stop of Appellant's vehicle because its taillights were not turned on. While Appellant was looking for his driver's license and insurance, Officer Fajardo asked him where he and his passenger were going. Appellant "kind of hesitated for a second . . . and then he sa[id], 'We're going to the bank.'" Officer Fajardo testified that it seemed "odd" that the two men would be going to the bank so late in the evening. He also explained that the way Appellant answered him made him question Appellant's truthfulness.

The video from Officer Fajardo's patrol car was played at trial. The video shows that after receiving the passenger's identification, Officer Fajardo told Appellant that he was going to issue a warning, and asked Appellant to exit the vehicle to look over some paperwork.[1] Once Appellant was outside the vehicle, Officer Fajardo asked Appellant whether he had anything on him that he was not supposed to have. Appellant responded, "No," and Officer Fajardo asked, "Nothing whatsoever?" Appellant responded by mumbling something. At trial, Officer Fajardo testified that it sounded as if Appellant had stated, "[N]othing but some cigarettes."

The video shows that as Appellant was walking towards the back of his vehicle, Officer Fajardo asked him, "Do you care if I pat you down real quick?" Appellant responded by stating

---

[1] The video also shows that prior to Officer Fajardo's conducting the traffic stop, the taillights on Appellant's vehicle were not illuminated.

what sounds like, "sure," turned around, lifted his arms to the side, and stood still. Officer Fajardo then conducts a pat down search of Appellant, makes a statement about cigarettes, and after completing the search, tells Appellant he can relax. The video shows that Officer Fajardo then asked Appellant, "Do you care if I see your cigarettes?" Appellant immediately reached into his pocket and handed the box of cigarettes to the officer. As Appellant was taking the cigarettes out of his pocket, Officer Fajardo told him, "Just going to take a quick look and I'll give them back to you." The video shows that Officer Fajardo dropped the box of cigarettes and immediately picked them up. After looking inside, he placed Appellant under arrest.

**Discussion**

In denying Appellant's motion to suppress, the trial court found there was probable cause to stop Appellant for a traffic violation and that the search was voluntary.[2] Specifically, the trial court stated, "I haven't heard anything that would raise it to the level of the officer coercing the defendant into doing anything[.]" The evidence adduced at the suppression hearing is consistent with that introduced at trial.

Officer Fajardo's testimony and the video of his interaction with Appellant support the trial court's finding that Appellant consented to the search of the cigarette box, and that Appellant's consent was voluntary. *See Valtierra*, 310 S.W.3d at 448. The record does not show that Appellant's will had been overborn and his capacity for self-determination critically impaired when he handed Officer Fajardo the box of cigarettes. *See Meekins*, 310 S.W.3d at 458. The trial court did not abuse its discretion by overruling Appellant's motion to suppress. Accordingly, we deny Appellant's third issue.

ADMISSION OF CRIMINAL HISTORY

In his fourth issue, Appellant contends that the trial court erred by admitting evidence of his criminal history during the guilt-innocence phase of trial. The evidence of Appellant's criminal history was contained in Defense exhibit 2.

**Standard of Review and Applicable Law**

We review the trial court's admission of evidence for abuse of discretion. *See Mozon v. State*, 991 S.W.2d 841, 846–47 (Tex. Crim. App. 1999). An abuse of discretion occurs when a

---

[2] In his brief, Appellant does not address the fact that Appellant consented to both the pat down search and Officer Fajardo's examination of the cigarette box's contents.

trial court's decision is so clearly wrong that it lies outside the zone of reasonable disagreement. *See Gonzalez v. State*, 117 S.W.3d 831, 839 (Tex. Crim. App. 2003).

A party may claim error in a ruling to admit evidence "only if the party requests the court to restrict the evidence to its proper scope and instruct the jury accordingly." *See* TEX. R. EVID. 105(b)(1). A party that seeks to introduce evidence for a limited purpose must request a limiting instruction at the first opportunity that such an instruction is proper. *See Hammock v. State*, 46 S.W.3d 889, 895 (Tex. Crim. App. 2001). Once evidence is received without a limiting instruction, it becomes part of the general evidence and may be used for all purposes. *See id.*

**Discussion**

While cross examining Officer Fajardo during trial, defense counsel introduced Officer Fajardo's offense report into evidence (Defense exhibit 2). Defense counsel did not offer the offense report for a limited purpose, the offense report contained no redactions, and the State did not object to the report's admission. On the next day of trial, defense counsel asked that portions of Defense exhibit 2 discussing Appellant's criminal record be redacted. The trial court denied defense counsel's request. On redirect, Officer Fajardo read aloud the last two sentences of Defense exhibit 2, which stated, "Walker advised me that he was currently on parole for drugs. Runnels, the passenger, said he used to be on parole for DWI."

By failing to offer Defense exhibit 2 for a limited purpose at the first opportunity (when defense counsel proffered the exhibit), it became part of the general evidence and was admitted for all purposes. *See* TEX. R. EVID. 105; *Hammock*, 46 S.W.3d at 895. We conclude that the trial court did not abuse its discretion by admitting Defense exhibit 2. *See Mozon*, 991 S.W.2d at 846–47. Accordingly, we overrule Appellant's fourth issue.

**DISPOSITION**

Having overruled each of Appellant's four issues, we ***affirm*** the judgment of the trial court.

**GREG NEELEY**
Justice

Opinion delivered April 30, 2015.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neely, J.*

(PUBLISH)

# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

APRIL 30, 2015

NO. 12-13-00333-CR

**WILBERT WALKER,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 349th District Court

of Houston County, Texas (Tr.Ct.No. 12CR-115)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*