**Opinion issued August 8, 2017**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-16-00250-CR

———————————

**OSVALDO CRUZ CORNEJO, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the 149th District Court
Brazoria County, Texas
Trial Court Case No. 75599-CR

## MEMORANDUM OPINION

A jury convicted appellant Osvaldo Cruz Cornejo of driving while intoxicated as a third offense, and it assessed punishment of four years in prison. *See* TEX. PENAL CODE §§ 49.04(a), 49.09(b)(2). On appeal, Cornejo raises two issues. He contends that the trial court improperly limited questioning during jury

selection by prohibiting his counsel from describing possible conditions of community supervision. He also contends that the court erred by denying his motion for mistrial because a comment during the State's closing argument about an extraneous offense was incurably harmful.

We affirm.

## Background

A black sport-utility vehicle struck a car that was stopped at a red light. The driver of the SUV continued, turning left through the intersection with smoke and steam emanating from the vehicle. The SUV traveled several miles down the road before it pulled into a driveway in a residential area.

Aaron Thomas and James Tucker were outside and saw the SUV pull into the driveway in front of Thomas's grandparents' house, about 25 feet from where they were standing. Thomas heard the car making grinding noises, noticed "it was having troubles," and watched as it "jumped into gear and tried to back out" but ended up stuck in a shallow ditch across the street. Thomas and Tucker offered assistance to the driver, whom they both identified at trial as appellant Osvaldo Cornejo.

Pearland Fire Department Lieutenant Eric Welch responded to the accident. Thomas and Tucker told him that Cornejo was the driver of the SUV. Cornejo

2

initially told Welch that he had not been driving. Welch testified that Cornejo later admitted that he had been driving, alone, in the SUV.

Department of Public Safety Trooper N. Gassiott also responded to the accident. Cornejo told Gassiott that he had been a passenger in the vehicle, and he described the driver as a man who looked like himself. Cornejo also told Gassiott that he always wears a seatbelt. At trial, Gassiott explained that a mechanism in car doors causes seat belts to retract during a collision to restrain passengers from contact with the dashboard or the airbag. He checked the seat belts in the SUV and found that all but the driver's seat belt were fully retracted and locked, which indicated to him that no passenger had been using those seat belts at the time of the collision. Because the driver's seat belt had some slack in it, Gassiott believed it was in use at the time of the collision.

At the scene, Gassiott suspected that Cornejo "was under the influence of a substance that hindered his ability to operate a motor vehicle." Cornejo smelled of alcohol, and he admitted that he had been drinking. He swayed when standing, and he had difficulty keeping his balance. He was arrested for driving while intoxicated.

During jury selection, defense counsel explained that "if the defendant swears that he has had no prior felony offense" convictions, he may apply for

3

community supervision. He started to identify possible conditions of probation, and the trial court sustained an objection:

Defense counsel: Now, what are the possible conditions of being placed on probation? What are some of the possible? Well, No. 1, commit no offense against this State or the United States. No. 2, do community service to make up for wrongdoing. No. 3, report in person to probation. No. 4, pay fines, court costs, restitution. Another one is to do 180 days in jail as a condition—

State: Your Honor, I'm going to object. Based on what the jury will assess, if they do do probation, they aren't going to decide the terms of probation.

Court: Counselor, I think you've gone far enough afield. I'm going to sustain the objection. Move on, please.

Defense counsel: Okay.

At trial Cornejo admitted that he had been intoxicated at the time of the collision, but he denied that he had been driving the vehicle. He testified that he was a self-employed electrician and that he had been working at a client's house on a project with a day laborer he had hired earlier that day. Cornejo testified that he had to dispose trash accumulated from the project. After drinking with his client, he did not want to drive, so he asked the day laborer to drive instead. He testified, "Well, prior to my last two convictions I quickly learned that drinking and driving is something that I would not do and I would never do it. So that's the reason why I had let him drive."

4

Cornejo maintained that he was asleep, reclined in the front passenger seat, wearing a seatbelt at the time of the initial collision at the red light. He asserted that when the vehicle finally stopped in the ditch, he had to climb into the driver's seat to get out because the passenger door "was completely smashed in." He said he "quickly jumped out the driver's side" to look at the vehicle. Cornejo also said that the driver, who was "roughly around" his size, ran from the scene. He did not know the man's full name or other identifying information about him.

Cornejo testified that his plan was for his brother and sister-in-law to meet him to drive the SUV home safely and soberly after the day laborer returned to his own car. On cross-examination, the State asked Cornejo questions relevant to his defensive theory about personal responsibility. Cornejo testified that he previously had not met the man who worked for him that day, and he learned the man's first name but not his last name:

State: You made the comment earlier that you didn't want to run off and leave your parents' car because you were responsible for it; right?

Defendant: Yes. That was the rule my parents told me, that I was responsible for the vehicle.

State: So would you say it's responsible to let someone you don't know and have never met before drive your parents' vehicle?

Defendant: . . . I believe it's something that I do quite frequently because I don't have a driver's license.

5

| | |
|---|---|
| State: | Okay. So you believe it is responsible. You're fine with it, letting someone else you don't know drive your parents' vehicle? |
| Defendant: | Depending on the person. The person, to my knowledge, he said that he had a vehicle. So to my knowledge I thought he had a driver's license. So I thought it was responsible for him to drive my vehicle—my parents' vehicle. |
| State: | Even though you didn't know him? |
| Defendant: | Even though I didn't know him. |
| State: | Just because he had a driver's license you were going to let him drive? |
| Defendant: | Of course. |
| State: | Did you see his driver's license? |
| Defendant: | No. |
| State: | Did you ask him for his driver's license? |
| Defendant: | No. |

The State referred to this testimony in its closing argument, despite a pretrial motion in limine that required it "not to mention, allude to or refer to, in any manner, any extraneous offenses" by Cornejo "in the presence of the jury." During closing arguments, the State emphasized that the case depended heavily on the jury's assessment of credibility because multiple witnesses testified that Cornejo was driving, yet he said he was only a passenger. The prosecutor said,

> You heard ten witnesses in this case from the State, ten of them who all said the same thing. People saw the defendant driving, could

tell you what he was wearing, looked at him in the face and said, that is the person driving the car. Those people have no stake in the outcome of this case. The only person who has a stake in the outcome of this case is the defendant. He is the only person whose story was different from everyone else's. Again, you determine the credibility. You determine the believability of everybody you heard.

Another thing is the defendant admitted just now on the stand he has no driver's license; yet, he also admitted he drove earlier in the day.

The court excused the jury to discuss the violation of the motion in limine. Defense counsel asked for a mistrial, which was denied, but the trial court gave the jury the following limiting instruction: "Ladies and gentlemen of the jury, you are instructed to disregard any comment made by either side with regard to the defendant not having a valid driver's license and not to consider it for any purpose."

The jury found Cornejo guilty, and it assessed punishment at four years in prison. Cornejo appealed.

## Analysis

### I. Limitation of questioning during jury selection

In his first issue, Cornejo argues that the trial court erred by limiting his counsel's examination during jury selection. He contends that the trial court should have permitted his counsel wider latitude to explain to the panel of potential jurors the possible conditions that a court can impose on a person sentenced to community supervision.

We review a challenge to limitation of voir dire under an abuse-of-discretion standard of review. *Sells v. State*, 121 S.W.3d 748, 755 (Tex. Crim. App. 2003); *Dewalt v. State*, 307 S.W.3d 437, 456 (Tex. App.—Austin 2010, pet. ref'd). "To preserve error, appellant must show that he was prevented from asking *particular* questions that were proper." *Sells*, 121 S.W.3d at 756. A showing that "the trial court generally disapproved of an area of inquiry from which proper questions could have been formulated" is insufficient to preserve error "because the trial court might have allowed the proper question had it been submitted for the court's consideration." *Id.*

The State objected to defense counsel's explanation of possible conditions of community supervision, and defense counsel acquiesced and moved forward with questioning. The trial court stated, "I think you've gone far enough afield. . . . Move on, please," and defense counsel said, "Okay." The record does not reflect any specific questions that Cornejo sought to ask but was prohibited from asking. Because he has not shown that he was prevented from asking a particular, proper question, he has failed to preserve error. *See Saldinger v. State*, 474 S.W.3d 1, 6 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd); *Dewalt*, 307 S.W.3d at 457; *Mohammed v. State*, 127 S.W.3d 163, 170 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd).

We overrule the first issue.

8

## II.     Closing argument

In the second issue, Cornejo argues that the court erred by denying his motion for mistrial based on the prosecutor's reference in closing argument to driving without a license.

We review both the denial of a motion for mistrial and a ruling on an objection to closing argument for an abuse of discretion. *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007); *see Cole v. State*, 194 S.W.3d 538, 545–46 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). We must uphold the court's ruling if it was within the zone of reasonable disagreement. *Archie*, 221 S.W.3d at 699. "Only in extreme circumstances, where the prejudice is incurable, will a mistrial be required." *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004).

Proper jury argument generally is confined to the following areas: (1) a summation of the evidence presented at trial; (2) a reasonable deduction drawn from that evidence; (3) an answer to the opposing counsel's argument; or (4) a plea for law enforcement. *Guidry v. State*, 9 S.W.3d 133, 154 (Tex. Crim. App. 1999); *Acosta v. State*, 411 S.W.3d 76, 93 (Tex. App.—Houston [1st Dist.] 2013, no pet.). In reviewing whether jury argument falls within one of these four areas, we consider the argument in light of the entire record. *Acosta*, 411 S.W.3d at 93. Even when jury argument improperly falls outside these four accepted areas, the

argument does not constitute reversible error unless, in light of the record as a whole, the argument is extreme or manifestly improper, violates a mandatory statute, or injects new facts harmful to the accused into the trial proceeding. *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000); *Acosta*, 411 S.W.3d at 93.

The defensive theory was that Cornejo was responsible, followed the law, and asked someone else to drive because he had been drinking beer. During closing arguments, while arguing about the importance of credibility, the prosecutor focused on the fact that the State's witnesses were disinterested but Cornejo, the only witness who said someone else was driving the SUV, was not disinterested. The prosecutor said, "Another thing is the defendant admitted just now on the stand he has no driver's license; yet, he also admitted he drove earlier in the day."

The evidence referenced by the prosecutor was elicited without objection when Cornejo offered a nonresponsive answer on cross-examination. The State asked if he thought it was responsible to allow a person he did not know to drive his car. In response, Cornejo testified, "I believe it's something that I do quite frequently because I don't have a driver's license." Defense counsel did not object or ask for a limiting instruction at that time.

When evidence is admitted without objection and without a limiting instruction, it becomes part of the general evidence and it may be used for all purposes. *See Hammock v. State*, 46 S.W.3d 889, 895 (Tex. Crim. App. 2001); *Walker v. State*, 469 S.W.3d 204, 213 (Tex. App.—Tyler 2015, pet. ref'd); *see also* TEX. R. EVID. 105(b)(1).

In *Bacon v. State*, 500 S.W.2d 512 (Tex. Crim. App. 1973), the defendant testified during the guilt-or-innocence phase, and he offered a nonresponsive answer to a question on cross-examination. *Id.* at 514. When asked what he told the police, the defendant volunteered that he had asked to "take a lie detector test." *Id.* The prosecutor referred to the defendant's testimony about a "polygraph examination" in closing argument. *Id.* The Court of Criminal Appeals held that although "evidence of polygraph examinations is not proper evidence in a criminal trial," and "thus, not a proper subject of argument," there was "no error when appellant himself first mentioned the subject while testifying in his own behalf." *Id.* Because the "appellant was the first to bring up the matter and the prosecutor's argument merely referred to what was already in evidence," the Court held that the argument was not improper. *Id.*

Cornejo injected into evidence his lack of a driver's license by volunteering that information in response to a question that did not inquire about it. His attorney did not object or seek a limiting instruction at the time, and thus, the testimony was

admitted for all purposes. *See Hammock*, 46 S.W.3d at 895. While the prosecutor's reference to this testimony was prohibited by the limine order, the substance of the argument was not otherwise improper because summation of the evidence and reasonable deductions from the evidence are proper areas of jury argument. *See Guidry*, 9 S.W.3d at 154; *Acosta*, 411 S.W.3d at 93; *see also Bacon*, 500 S.W.2d at 514. Moreover, the prosecutor did not emphasize the extraneous offense and made no improper reference to matters outside the record. *See Gaddis v. State*, 753 S.W.2d 396, 400 (Tex. Crim. App. 1988).

In any case, the court gave a limiting instruction directing the jury to "disregard any comment made by either side with regard to the defendant not having a valid driver's license and not to consider it for any purpose." In the absence of evidence to the contrary, we presume that the jury followed this instruction. *See Walker v. State*, 300 S.W.3d 836, 850 (Tex. App.—Fort Worth 2009, pet. ref'd). No such evidence is present in this case.

We overrule the second issue.

12

## Conclusion

We affirm the judgment of the trial court.


Michael Massengale
Justice

Panel consists of Chief Justice Radack and Justices Keyes and Massengale.

Do not publish.  TEX. R. APP. P. 47.2(b).