**Affirmed as Modified and Memorandum Opinion filed December 2, 2021.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-19-00979-CR

---

**TORY WILLIAMS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 184th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1557626**

---

## MEMORANDUM OPINION

A jury convicted appellant Tory Williams of robbery. *See* Tex. Penal Code Ann. § 29.02. In his sole issue, appellant asserts that the trial court's voir dire deprived him of his right to due process and a fair trial. We affirm the judgment of the trial court as modified to delete the special finding.

# I. BACKGROUND[1]

On July 26, 2017, Mark Villarreal and his fiancée's mother and brother were sitting in a car parked outside of her apartment waiting for Villarreal's fiancée.[2] Appellant approached the car and pointed what appeared to be a real gun directly at Villarreal's face. Appellant demanded "stuff" and "money" from Villarreal, and told him to empty his pockets. Villarreal had only a phone in his pockets and gave it to appellant. Appellant then moved to the back of the car and took the brother's phone and the mother's purse, which contained her phone. After taking the items, appellant left.

When appellant left, Villarreal exited the vehicle, went to the apartment door as his fiancée was exiting the apartment, and used his fiancée's phone to call 911. When the police arrived, Villareal gave a description of the robber and the gun, and used his fiancée's phone to track the GPS location of his own phone because the location of the phones was shared via the iCloud. Villarreal informed the officers that arrived of the general area of his phone's location and then met with an officer to show him the phone. The officer took the phone and went into the apartment complex. A SWAT team then apprehended appellant in the utility closet of a nearby apartment complex and took him into custody. The officers found a BB gun and the three phones belonging to Villarreal, and his fiancee's mother and brother underneath the dryer in the utility closet.

Several days later, Officer Clifton Walker visited Villarreal at work to present a photo array. Walker testified that an investigator prepared the array. Villarreal immediately picked appellant out of the photo array, telling Walker he

---

[1] Because the parties are familiar with the facts of the case and the evidence adduced at trial, we set forth the facts of the case necessary to advise the parties of the court's decision and the basic reasons for it in light of the issues raised. *See* Tex. R. App. P. 47.1, 47.4.

[2] At the time of trial, Villarreal was engaged to his girlfriend.

2

was "a hundred percent confident."

In July 2017, appellant was criminally charged for the underlying offense of felony robbery. He pleaded not guilty and the case proceeded to trial by jury.

Voir dire began on October 21, 2019. On October 23, 2019, the jury found appellant guilty of robbery. *See id.* The trial court accepted an agreement by the State and Appellant of thirty years imprisonment in the Texas Department of Criminal Justice and sentenced appellant on October 23, 2019. This appeal timely followed.

## II. DUE PROCESS & FAIR TRIAL

In a single issue, appellant argues that the trial court's voir dire deprived him of his right to due process and fair trial. More specifically, he argues the trial court improperly "entered the fray" in four ways: (1) exceeding the permissible amount of "intervention" into the advocates' voir dire; (2) undermining his Fifth Amendment right not to testify; (3) commenting on the evidence; and (4) reading the indictment to the venire members. *See Brown v. State*, 122 S.W.3d 794, 797 (Tex. Crim. App. 2003) ("In the Texas adversarial system, the judge is a neutral arbiter between the advocates; he is the instructor in the law to the jury, but he is not involved in the fray.").

### A. ERROR PRESERVATION

Generally, to preserve error, a defendant must make a timely and specific objection. *See* Tex. R. App. P. 33.1; *Powell v. State*, 252 S.W.3d 742, 744–45 (Tex. App.—Houston [14th Dist.] 2008, no pet.). Almost every right, constitutional and statutory, may be waived by the failure to object. *Smith v. State,* 721 S.W.2d 844, 855 (Tex. Crim. App. 1986); *Powell*, 252 S.W.3d at 744–45. "Absent an objection, a defendant waives error unless the error is fundamental—that is, the

error creates egregious harm." *Powell*, 252 S.W.3d at 744–45 (citing *Ganther v. State,* 187 S.W.3d 641, 650 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd)); *see* Texas R. Evid. 103(d); *Villareal v. State,* 116 S.W.3d 74, 85 (Tex. App.—Houston [14th Dist.] 2001, no pet.). A defendant suffers egregious harm if the error prevented him from having a fair and impartial trial. *See Powell*, 252 S.W.3d at 744–45; *Ganther,* 187 S.W.3d at 650. In this case, appellant complains about the trial court's actions and comments during voir dire. Because appellant failed to make any timely and specific objections in the trial court, appellant's claims only survive on appeal if the trial judge's actions and comments constitute fundamental error. *See* Tex. R. App. P. 33.1; *Powell*, 252 S.W.3d at 744–45.

The United States Supreme Court has determined that when certain constitutional rights are violated, fundamental error occurs. *See Arizona v. Fulminante,* 499 U.S. 279, 309–10 (1991); *Williams v. State,* 194 S.W.3d 568, 579 (Tex. App.—Houston [14th Dist.] 2006), *aff'd,* 252 S.W.3d 353 (Tex. Crim. App. 2008). The Supreme Court has defined such errors as "structural defects in the constitution of the trial mechanism." *Fulminante,* 499 U.S. at 111; *see Powell*, 252 S.W.3d at 744–45. The Supreme Court has additionally determined these fundamental constitutional rights include the right to counsel, the right to an impartial judge, the right to not have members of the defendant's race unlawfully excluded from a grand jury, the right to self-representation at trial, and the right to a public trial. *Id.* at 309–10; *Williams,* 194 S.W.3d at 579.

In addition to the fundamental errors established by the United States Supreme Court, a plurality of the Texas Court of Criminal Appeals, in *Blue v. State,* held a fundamental error of constitutional dimension exists if a trial judge makes a comment that taints the presumption of innocence. *Blue v. State,* 41 S.W.3d 129, 132 (Tex. Crim. App. 2000) (plurality op.).

4

## B.    APPLICABLE LAW

Due process requires a neutral and detached judge. See *Brumit v. State*, 206 S.W.3d 639, 644–45 (Tex. Crim. App. 2006); *Luu v. State*, 440 S.W.3d 123, 128–29 (Tex. App.—Houston [14th Dist.] 2013, no pet.); *Dockstader v. State,* 233 S.W.3d 98, 108 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd). A judge should not act as an advocate or adversary for any party. *See Brumit*, 206 S.W.3d at 644–45. To reverse a judgment on the ground of improper conduct or comments of the judge, the record must show (1) that judicial impropriety was in fact committed, and (2) probable prejudice to the complaining party. *See Dockstader v. State*, 233 S.W.3d 98, 108 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd). The scope of our review is the entire record. *Id.*

Judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. *Luu*, 440 S.W.3d at 128–29; *Dockstader*, 233 S.W.3d at 108. Such remarks may constitute bias if they reveal an opinion deriving from an extrajudicial source, but when no extrajudicial source is alleged, such remarks will constitute bias only if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible. *Dockstader*, 233 S.W.3d at 108.

## C.    APPLICATION

Appellant relies on *Blue* as the primary basis for his argument that the trial judge's comments and actions during voir dire constitute fundamental error and that accordingly, he was not required to object during trial to preserve error. *See Blue,* 41 S.W.3d at 132. In this case, however, we ultimately need not determine whether the alleged errors were fundamental because after reviewing the record, we conclude that the trial court's actions and comments did not violate appellant's due process rights or exhibit any signs of bias or partiality. *See Brumit,* 206 S.W.3d

5

at 644–45 (Tex. Crim. App. 2006) (declining to decide whether an objection is required to preserve an error of this nature and instead resolving the issue on the basis that the record did not reflect partiality of the trial court).

### 1. The Trial Court Did Not Act as an Advocate For The State

Appellant first claims that the trial court acted as an advocate for the State. In support of this argument, appellant points to the fact that the trial court's voir dire lasted longer than the appellant's and State's voir dire combined. The trial court's voir dire consists of forty-seven pages of the reporter's record, whereas the State's and appellant's combined voir dire consists of approximately forty-six pages. However, we note that at least seven of the trial court's pages of voir dire simply consisted of welcoming the jury, asking about scheduling conflicts, and other court procedures. More importantly, appellant has not cited, nor have we found, any caselaw supporting the proposition that the length of a trial court's voir dire can serve as evidence of the court acting as an advocate for the State. *Cf. Hankins v. State*, 132 S.W.3d 380, 384 (Tex. Crim. App. 2004) ("A trial court has broad discretion over the voir dire process."); *see also Gibson v. State*, No. 14-19-00827-CR, 2020 WL 7626406, at *5 (Tex. App.—Houston [14th Dist.] Dec. 22, 2020, pet. ref'd) (mem. op., not designated for publication) ("Appellant has not explained how the allegedly 'protracted' duration of the judge's voir dire negatively impacted his right to a fair trial, and we see nothing in its mere length to indicate otherwise.").

Appellant also contends that the trial court introduced the idea that appellant may have a criminal history. However, appellant concedes that "it seems clear that the judge attempted to be careful and did not intend to imply that [appellant] is guilty or has a criminal history." We come to the same conclusion regarding her complained of comment:

> Your job will be to objectively evaluate the evidence that you have heard, take that evidence, the credible evidence that you heard along with the law that I will give you, and render your verdict based on the law and the evidence. With regards to that, again, it's an objective evaluation. I say that because when I talk about punishment, sometimes we talk about it being a subjective process. Meaning that things that are not relevant to guilt/innocence may be taken into consideration at the punishment phase of a trial.
>
> . . .
>
> In fact, [the State] wouldn't be allowed to talk about a person's background at all, if this is an aberration for that individual or it is a continuation of bad behavior for that individual. Those are things that would not be taken into consideration during the guilt/innocence phase of a trial, but the Court could take into consideration in the punishment phase of a trial.
>
> In other words, is this the first time this person has ever done anything wrong and this is, again, a complete aberration; or is this a continuation of bad behavior, is something that the Court would take into consideration, not the jury, during the guilt/innocence? Does that make sense to everyone?

Therefore, we conclude that the trial court did not act as an advocate for the State. *See Walker v. State*, 469 S.W.3d 204, 209 (Tex. App.—Tyler 2015, pet. ref'd) ("[T]here is no presumption that a defendant is denied due process and an impartial jury when a jury panel has been exposed to his criminal history.").

## 2. The Trial Court Did Not Undermine Appellant's Fifth Amendment Right

Secondly, appellant argues that the trial court undermined the Fifth Amendment by comparing the present case to other well-known criminal prosecutions and defendants. During voir dire, the trial court explained to the venire persons:

> Have we all—everyone has heard of the Fifth Amendment? And that's a right that we give every citizen in this country. Everyone has the Fifth Amendment right not to testify. The fact that someone

7

exercises their Fifth Amendment right not to testify should not be shocking to you, should not be surprising to you. It happens in courthouses across this country every single day.

So, again, the burden of proof is with the State. The Defense is not required to bring you any evidence at all.

The trial court then proceeded to make a comparison:

I remember, specifically, I think it was Roger Clemens was being accused in a federal court. And I remember his attorney Rusty Hardin walking out on the steps of the federal courthouse and telling the media, and telling the community, his client was not going to testify.

And what he said was, The government hasn't proven that my client did anything wrong, therefore, he is not going to testify. Do you see how the case can rise or fall just based on the evidence that you hear?

And if the State doesn't prove someone committed the offense, why should the defendant testify? Does that make sense?

You base your decision on the evidence that you hear; not what you don't hear.

Again, using another example. Football this time. Sports. I remember a case years ago where a coach from Penn State—again, I am retired, so help me out. Sandusky was a coach at Penn State?

. . .

Accused of very serious allegations. And a jury found him guilty in that case. He did not testify. But, again, in that case, do you see how the jury based their decision on the evidence that they heard and not what they didn't hear? So, the fact that he testified should not have any significance—or did not testify, excuse me, should not have any significance upon your decision.

So that being said, I want to make sure that each of you can follow that aspect of the law. And if the defendant chooses not to testify in this case, that you will not use it as any evidence against him in his trial.

In fact, at the end of this trial, I will give you a written instruction that tells you you must not and cannot allude to the fact that the defendant didn't testify or discuss it for any purpose, whatsoever, as any evidence against him. Can each of you follow that instruction?

8

Here, the record reflects that the trial court properly instructed the venire persons that all criminal defendants are presumed innocent; that the State had the burden to prove each element; and that if appellant chose not to testify, then the jury would not be allowed to use that decision against him. Our sister court has concluded that similar comparisons to other criminal defendants did not constitute fundamental error. *See Caldwell v. State*, No. 01-00-00761-CR, 2002 WL 396578, at *4 (Tex. App.—Houston [1st Dist.] Mar. 14, 2002, no pet.) (mem. op., not designated for publication) (concluding that there was no fundamental error when the trial court referred to O.J. Simpson and Charles Manson in explaining the Fifth Amendment right not to testify). Furthermore, the jury charge reiterated that:

> Our law provides that a defendant may testify in his own behalf if he elects to do so. This, however, is a right accorded a defendant, and in the event he elects not to testify, that fact cannot be taken as a circumstance against him.
>
> In this case, the defendant has elected not to testify and you are instructed that you cannot and must not refer to or allude to that fact throughout your deliberations or take it into consideration for any purpose whatsoever as a circumstance against him.
>
> . . . .
>
> All persons are presumed to be innocent and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt.

Ultimately, the trial court accurately explained the Fifth Amendment and the jury received the correct instruction before deliberation. *See Williams v. State*, 937 S.W.2d 479, 490 (Tex. Crim. App. 1996) (noting that it is assumed the jury followed given instruction in absence of evidence jury was confused by charge given at guilt-innocence stage); *Caldwell*, 2002 WL 396578, at *4 ("We presume the jury followed this instruction.").

Because we conclude there is no fundamental error here, appellant's failure

9

to object waived any error as to this complaint. *See* Tex. R. App. P. 33.1. We cannot conclude that the trial court's comments on the Fifth Amendment denied appellant of an impartial trial. *See Powell*, 252 S.W.3d at 744–45.

### 3. The Trial Court Did Not Comment on The Evidence

Third, appellant contends that the trial court commented on the evidence and its relationship to the burden of proof in violation of Texas Code of Criminal Procedure Article 38.05. *See* Tex. Code Crim. Proc. Ann. art. 38.05 ("In ruling upon the admissibility of evidence, the judge shall not discuss or comment upon the weight of the same or its bearing in the case, but shall simply decide whether or not it is admissible; nor shall he, at any stage of the proceeding previous to the return of the verdict, make any remark calculated to convey to the jury his opinion of the case."). Specifically, appellant complains about three comments of the trial court.

### a. Applicable Law & Standard of Review

A trial judge improperly comments on the weight of the evidence if she makes a statement that (1) implies approval of the State's argument; (2) indicates any disbelief in the defense position; or (3) diminishes the credibility of the defense's approach to the case. *See Kim v. State*, 331 S.W.3d 156, 160 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd).

If a trial judge improperly comments on the weight of the evidence, we must then decide the materiality of the comment. *Id.*; *Simon v. State,* 203 S.W.3d 581, 592 (Tex. App.–Houston [14th Dist.] 2006, no pet.). A comment is material if the jury was considering the same issue. *Kim*, 331 S.W.3d at 160. If the comment was material, this court must then determine whether the comment rises to the level of reversible error. *Id.* "A comment creates reversible error if it is 'either reasonably

calculated to benefit the State or to prejudice the defendant's right to a fair and impartial trial.'" *Id.* (quoting *Simon,* 203 S.W.3d at 592).

### b. First Comment

Appellant first complains of the following remark made by the trial court during voir dire after reading the indictment: "[P]ointing a fake pistol at the complainant. Those are the allegations in the indictment. That is what makes this a robbery and not an aggravated robbery. An aggravated robbery would be an offense where a deadly weapon, namely, a real gun was used in the offense." Appellant argues that the court's word choice suggested that the allegations were true. We disagree.

The trial court's words gave no hint of partiality or any indication regarding whether the trial court believed the allegations to be true. Instead, the trial court was clarifying that the offense at issue could not be an aggravated robbery because the State did not allege the use of a real weapon. *See* Tex. Penal Code Ann. § 29.03(a)(2) (providing that a person commits aggravated robbery if the person commits a robbery and uses or exhibits a deadly weapon). Additionally, appellant complains that the trial court's comment could have confused the jury into believing that the use of a fake gun was an element of the crime. However, even if her comment could be construed in such a confusing manner, the trial court properly instructed the jury in the jury charge that they could only convict appellant if they found that, while in the course of committing a theft, he "intentionally or knowingly threaten or place [Villarreal] in fear of imminent bodily injury or death, by pointing a fake pistol at [Villarreal]."

Therefore, we conclude that this was not an improper comment by the trial court. *See Kim*, 331 S.W.3d at 160.

11

### c. Second Comment

Next, appellant argues that the trial court misrepresented the concept of proof beyond a reasonable doubt by using an analogy from the television show C.S.I. The trial court explained: "Those cases are proven beyond a reasonable doubt using scientific evidence, which is another way of saying circumstantial evidence, indirect evidence that proves that person is guilty." Appellant proceeds to claim, "[m]uch worse for [appellant], the judge also claimed the State can meet its burden of proof with one credible witness." However, that is simply an accurate statement of the law. *See Lee v. State*, 206 S.W.3d 620, 623–24 (Tex. Crim. App. 2006) (concluding that a juror is challengeable for cause if he cannot convict based upon a sole witness's testimony whom he believed beyond a reasonable doubt as to all of the elements of the offense); *see also Roland v. State*, No. 14-08-00290-CR, 2010 WL 307894, at *3 (Tex. App.—Houston [14th Dist.] Jan. 28, 2010, no pet.) (mem. op., not designated for publication) (observing that during voir dire, it is proper to ask venire members about the "one witness rule"). Thus, as the trial court properly explained immediately prior to the C.S.I. example: "The law doesn't require that the State bring you a certain type of evidence to prove their case beyond a reasonable doubt."

We also note that our sister court has previously held the argument that the trial court misstated or misrepresented the standard of reasonable doubt in relation to the State's burden of proof is waivable error that requires objection. *See Arrellano v. State*, 555 S.W.3d 647, 651–53 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd) (concluding that trial objection was required to preserve error on complaint that the trial court had misstated the burden of proof beyond a reasonable doubt because the argument "concern[ed] a statement of law, rather than a comment on the weight of the evidence").

Therefore, appellant has failed to preserve this particular issue for our review. *See* Tex. R. App. P. 33.1. Additionally, we conclude that the trial court's comments were proper. *See Kim*, 331 S.W.3d at 160.

### d. Third Comment

In a related complaint, appellant avers that the trial court's improper comments undermined his ability to attack discrepancies in the evidence.

The trial court gave an example of the State attempting to prove that a defendant committed a burglary of a habitation. In the example, two witnesses saw a suspect in a pickup truck; one witness described the vehicle as purple, the other described it as maroon. The trial court explained: "In that circumstance, does the State have to prove what color the pickup truck was? No. That's not one of the things that they are required to prove beyond a reasonable doubt." Appellant argues that in a real case, the difference in the witnesses' description might be important because it reflects a discrepancy in the evidence. However, the trial court never instructed the venire persons that discrepancies were unimportant or could not be attacked. To the contrary, the trial court affirmed that the jury would need to "evaluate the evidence." The trial court's analogy about the pickup truck was simply used to reemphasize the State's burden to prove all of the elements of the offense, beyond a reasonable doubt, and nothing more.

We conclude that the trial court's comments were accurate and proper. *See Nisbett v. State*, 552 S.W.3d 244, 262 (Tex. Crim. App. 2018) ("Due process requires that the State prove, beyond a reasonable doubt, every element of the crime charged.").

### 4. The Court's Reading of the Indictment

Lastly, appellant complains that the reading of the indictment to the venire

members during the voir dire allowed the State to "improperly indoctrinate the venire members to its theory of prosecution."

According to appellant, the trial court is supposed to read the indictment to the jury at the beginning of trial, after jury selection. *See* Tex. Code Crim. Proc. Ann. Art. 36.01(a)(1). Indeed, the Texas Code of Criminal Procedure does not mention that a trial court should read the indictment during the voir dire. *See generally id.* Art. 35. However, we have found no cases to support the proposition that reading the indictment during the voir dire constitutes fundamental error. We also note that several courts have concluded that a defendant must object to preserve this specific argument for appellate review. *See White v. State*, Nos. 01-02-00420-CR & 01-02-00421-CR, 2003 WL 22413405, *1 (Tex. App.—Houston [1st Dist.] Oct. 23, 2003, pet. ref'd) (mem. op., not designated for publication) (concluding that the defendant failed to preserve error for appellate review by failing to object when the trial court read the indictment during voir dire); *see also Cisneros v. State*, No. 13–13–00125–CR, 2013 WL 7864085, *3 (Tex. App.— Corpus Christi–Edinburg Dec. 5, 2013, pet. ref'd) (mem. op., not designated for publication).

Because appellant failed to object, this argument has not been preserved for our review. *See* Tex. R. App. P. 33.1. Even if the error had been preserved, appellant has not demonstrated any harm. Before reading the indictment, the trial court told the venire panel, "I want you to understand that as I read to you from this indictment, the indictment is not evidence. In fact, the indictment is simply the piece of paper that brings us all together." Then after reading the indictment, the trial court commented: "I read to you from that indictment. Again, that indictment is not evidence. Our law is based on the presumption of innocence." We conclude that the trial court's reading of the indictment during voir dire did not deny

14

appellant a fair trial. *See Gibson*, 2020 WL 7626406, at \*6 ("The challenged comments here, however, occurred in connection with the judge's reading of the allegations in the indictment, which is not improper."); *see also Powell*, 252 S.W.3d at 745.

In summary, we conclude that none of the trial court's comments or actions denied appellant a fair trial or due process. Furthermore, appellant failed to make any objections below, and thus, failed to preserve his arguments for our review. We overrule his sole issue.

Further, the judgment contains the following special finding, "APPEAL WAIVED. NO PERMISSION TO APPEAL GRANTED." The record does not demonstrate there was consideration for appellant's waiver. *See Jones v. State*, 488 S.W.3d 801, 807–08 (Tex. Crim. App. 2016); *Ex parte Broadway*, 301 S.W.3d 694, 699 (Tex. Crim. App. 2009). The record reflects that appellant entered a plea of not guilty, but then came to an agreement with the State as to punishment. Other than this language in the judgment, nothing else in the record reflects that appellant was waiving his right to appeal. Additionally, the trial court's certification of the defendant's right of appeal indicates that appellant had the right of appeal. And generally, a certification of appeal controls over previous recitations in the record indicating that the right to appeal is waived. *See Willis v. State*, 121 S.W.3d 400, 403 (Tex. Crim. App. 2003) ("We now hold that the trial court's subsequent handwritten permission to appeal controls over a defendant's previous waiver of the right to appeal, allowing the defendant to appeal despite the boilerplate waiver."). We therefore modify the judgment to delete the special finding.

As modified, the judgment is affirmed.

## III.  CONCLUSION

We affirm the judgment of the trial court as modified.


/s/      Margaret "Meg" Poissant
         Justice


Panel consists of Justices Jewell, Poissant, and Wilson.

Do Not Publish — Tex. R. App. P. 47.2(b).