

# NUMBER 13-24-00173-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

**JOSE LUIS ESPINOZA,**                                                   **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                   **Appellee.**

## ON APPEAL FROM THE 103RD DISTRICT COURT
## OF CAMERON COUNTY, TEXAS

## MEMORANDUM OPINION

**Before Chief Justice Tijerina and Justices West and Cron**
**Memorandum Opinion by Justice Cron**

A jury convicted appellant Jose Luis Espinoza of one count of continuous sexual abuse of a young child, a first-degree felony, and two counts of indecency with a child by sexual contact (breast touching), second-degree felonies. *See* TEX. PENAL CODE §§ 21.02(b), (g), 21.11(a)(1), (d). The jury sentenced Espinoza to prison terms of twenty-

five years on the first-degree felony and twenty years on each second-degree felony, and the trial court ordered the sentences to run concurrently. By nine issues, which we have reorganized, Espinoza complains that: (1) the evidence was insufficient to support his conviction for continuous sexual abuse because the State failed to prove the duration element of the offense; (2) his convictions for indecency with a child constitute double jeopardy violations; (3–5) for multiple reasons, the trial court erred in admitting certain outcry testimony; (6) the trial court erred in admitting evidence of Espinoza's extraneous offenses and bad acts; (7) the trial court erred in admitting the complainants' medical records; (8) the trial court erred in allowing expert testimony commenting on the complainants' credibility; and (9) even if the trial court's individual errors were harmless, the cumulative effect of those errors resulted in harm to Espinoza. We affirm.

## I. BACKGROUND

Cousins B.H. and P.P. are the complainants in this case, and Espinoza was their step grandfather.[1] Count I of the indictment alleged that, "during a period that was 30 or more days in duration," Espinoza, an adult, committed two or more acts of sexual abuse against B.H. "AND/OR" P.P., children under the age of fourteen, by touching the genitals of both children and causing P.P. to touch his genitals. In Counts II and III, the State alleged that Espinoza committed indecency with a child "by touching the breast" of each child.

---

[1] To protect the identity of the complainants, we refer to them by the pseudonyms given to them in the indictment. *See* TEX. CODE CRIM. PROC. art. 58.102(a). We likewise refer to certain family members by pseudonyms.

2

B.H., eighteen years old at the time of trial, testified that she had known Espinoza since "childhood" and would see him when she visited her grandmother's home, which occurred "[p]retty often." The abuse began when she "was nine to ten" years old. Initially, Espinoza would touch her in ways that were not overtly sexual, but "[i]t progressed to him touching [her] chest" and "[her] vagina and [her] butt." Espinoza would use "[h]is hands" to "grope" these areas of her body over her clothing. "Over the span of a year," this occurred "twenty to thirty times," and each incident involved Espinoza touching the same parts of B.H.'s body.

P.P., sixteen years old at the time of trial, testified that she previously lived with her grandmother and Espinoza. P.P. and her grandmother slept inside the main house, but Espinoza slept by himself in an addition built onto the home. P.P. said the abuse began when she "was around seven to eight years old." The first incident occurred in Espinoza's room and involved him rubbing his penis against her vagina over her clothes. She recalled another incident when he pulled his penis out, moved her underwear, and rubbed his penis against her bare vagina. She said there were other times he did the same things to her and that there was at least one instance when he touched her "breasts." She also recalled an incident where he made her touch his penis with her hand over his underwear. During some of these encounters, Espinoza would masturbate in front of P.P. and ejaculate on the floor. Although P.P. was certain that the abuse occurred "more than four times," she could not say how long the abuse continued. For instance, when the State asked whether the abuse occurred over a period of "more than a month," P.P. responded, "I don't remember." When asked "how much time passed" between the

first and last incident, P.P. answered, "I don't exactly remember."

The jury also heard testimony from several outcry witnesses, a school counselor, and two sexual assault nurse examiners (SANE). Each of these witnesses testified that one or both complainants previously made statements accusing Espinoza of various forms of sexual abuse. Throughout the trial, Espinoza attempted to discredit the complainants by highlighting purported inconsistencies between their prior statements and testimony.

Espinoza's primary defensive theories at trial were fabrication and lack of opportunity. He called nine witnesses, many of whom were related to Espinoza by consanguinity. These witnesses generally testified to Espinoza's good character and expressed disbelief that he committed the offenses. Some of them testified that they had no reservations about leaving their young children in Espinoza's care after the allegations surfaced. One witness, the complainants' uncle, suggested that his sister M.J., P.P.'s mother, was involved in fabricating the allegations because of a long-running feud between her and Espinoza about who should inherit the grandmother's estate, including the home M.J., P.P., Espinoza, and the grandmother resided in before she passed away. The jury also heard testimony that before her passing, the grandmother did not believe the allegations and accused the children of "lying."

The jury found Espinoza guilty of all three offenses and sentenced him as detailed above. This appeal ensued.

## II. SUFFICIENCY

Espinoza first claims the evidence is insufficient to support his conviction for

continuous sexual abuse because the State failed to prove the duration element beyond a reasonable doubt.

## A.     Standard of Review

To satisfy constitutional due process requirements, a criminal conviction must be supported by sufficient evidence. *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). "Evidence is sufficient to support a criminal conviction if a rational jury could find each essential element of the offense beyond a reasonable doubt." *Stahmann v. State*, 602 S.W.3d 573, 577 (Tex. Crim. App. 2020) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In a legal sufficiency review, "we consider all the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt." *Hammack v. State*, 622 S.W.3d 910, 914 (Tex. Crim. App. 2021). Our obligation to review "all the evidence" includes evidence that may have been improperly admitted. *Moff v. State*, 131 S.W.3d 485, 489–90 (Tex. Crim. App. 2004).

We measure the sufficiency of the evidence against "the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A hypothetically correct charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.*

5

"To obtain a conviction for continuous sexual abuse of a child, the State must show that the defendant committed at least two acts of sexual abuse against [one or more victims] younger than 14 years of age during a period of at least 30 days' duration." *Ramos v. State*, 636 S.W.3d 646, 651 (Tex. Crim. App. 2021) (citing TEX. PENAL CODE § 21.02(b)). "[M]embers of the jury are not required to agree unanimously on which specific acts of sexual abuse were committed by the defendant or the exact date when those acts were committed." TEX. PENAL CODE § 21.02(d). But the proof must establish, beyond a reasonable doubt, a period of "at least 28 days between the day of the first act of sexual abuse and the day of the last act of sexual abuse." *Perez v. State*, 689 S.W.3d 369, 378 (Tex. App.—Corpus Christi–Edinburg 2024, no pet.) (quoting *Smith v. State*, 340 S.W.3d 41, 48 (Tex. App.—Houston [1st Dist.] 2011, no pet.)); *see Pelcastre v. State*, 654 S.W.3d 579, 586 (Tex. App.—Houston [14th Dist.] 2022, pet. ref'd); *Turner v. State*, 573 S.W.3d 455, 461 (Tex. App.—Amarillo 2019, no pet.). The uncorroborated testimony of a child victim can legally support a conviction for a sexual offense. TEX. CODE CRIM. PROC. art. 38.07(b)(1).

## B.    Analysis

Espinoza argues the State failed to prove the duration element of the offense because "the trial record is incomplete regarding the dates of the alleged abuse" and there was no contextual evidence that would allow a reasonable juror to conclude that two or more acts of sexual abuse occurred at least thirty days apart.

To begin, the State was not required to prove the exact dates of abuse. *See* TEX. PENAL CODE § 21.02(d); *Michell v. State*, 381 S.W.3d 554, 561 (Tex. App.—Eastland

6

2012, no pet.) ("The legislature created the offense of continuous sexual abuse of a child in response to a need to address sexual assaults against young children who are normally unable to identify the exact dates of the offenses when there are ongoing acts of sexual abuse."). Rather, the State was only required to prove that there were two or more acts of sexual abuse that occurred during a period that was thirty or more days in duration. *See* TEX. PENAL CODE § 21.02(b)(1); *Perez*, 689 S.W.3d at 378. To that end, B.H. testified that, beginning when she was nine or ten years old, Espinoza "grope[d]" her vagina over her clothing "twenty to thirty times" during "the span of a year." *See* TEX. PENAL CODE §§ 21.02(c)(2) (defining "act of sexual abuse" to include indecency with a child by sexual contact), 21.11(c)(1) (defining "sexual contact" to mean "any touching by a person, including touching through clothing, . . . any party of the genitals of the child"). This evidence alone was legally sufficient to establish the duration element of the offense. *See* TEX. PENAL CODE § 21.02(b)(1); TEX. CODE CRIM. PROC. art. 38.07(b)(1); *Perez*, 689 S.W.3d at 378. Espinoza's first issue is overruled.

### III. DOUBLE JEOPARDY

Espinoza next complains that his convictions for indecency with a child by sexual contact constitute double-jeopardy violations because these offenses were predicate acts of sexual abuse committed against the same complainants during the period of continuous sexual abuse. *See* TEX. PENAL CODE § 21.02(e).

The Double Jeopardy Clause of the Fifth Amendment, which is applicable to the states through the Fourteenth Amendment, protects a person from multiple punishments for the same offense. U.S. CONST. amends. V, XIV; *Garfias v. State*, 424 S.W.3d 54, 58

7

(Tex. Crim. App. 2014). "In the multiple-punishments context, two offenses may be the same if one offense stands in relation to the other as a lesser-included offense, or if the two offenses are defined under distinct statutory provisions but the Legislature has made it clear that only one punishment is intended." *Littrell v. State*, 271 S.W.3d 273, 275–76 (Tex. Crim. App. 2008). By enacting section 21.02(e) of the Texas Penal Code, "the Legislature clearly intended to disallow dual convictions for the offense of continuous sexual abuse and for offenses enumerated as 'acts of sexual abuse' when [both convictions are] based on conduct against the same child during the same period of time." *Price v. State*, 434 S.W.3d 601, 606 (Tex. Crim. App. 2014).

This issue is easily dispatched because breast touching is expressly excluded as an "act of sexual abuse" that can support a conviction for continuous sexual abuse, TEX. PENAL CODE § 21.02(c)(2), which means section 21.02(e)'s prohibition on multiple convictions does not apply in this case. *See id.* § 21.02(e). Espinoza's second issue is overruled.

## IV.    OUTCRY WITNESSES

In issues three through five, Espinoza argues the trial court erred in the admission of certain outcry testimony because the State failed to provide timely notice for three of its outcry witnesses, because B.H. was fifteen years old at the time she made her outcry to one of the witnesses, and because the trial court allowed multiple outcry witnesses to testify about the same allegations of sexual abuse.

**A.    Relevant Facts**

On November 3, 2022, the State notified Espinoza that B.H.'s outcry witnesses

8

would be her mother D.H. and her school counselor Ivonne Ceballos, and P.P.'s outcry witnesses would be her mother M.J. and forensic interviewer Jessica Davila.

On March 13, 2024, five days before trial, Espinoza filed a "motion to clarify outcry witness" arguing: (1) there should only be one outcry witness for each complainant; and (2) the discovery provided by the State indicated that Ceballos was the proper outcry witness for B.H. and that P.P.'s sister S.J. was the proper outcry witness for P.P.

Later that same day, the State filed an amended notice identifying two new outcry witnesses for B.H. The notice specified that, in addition to the previously disclosed outcry statements made to D.H. and Ceballos, B.H. also made outcries to school nurse Nereida Meza and Davila, the forensic interviewer. Two days later, the State filed its second amended notice identifying P.P.'s sister S.J. as a third outcry witness for P.P. In total, the second amended notice identified seven outcry witnesses for the two complainants.

After the jury was selected and empaneled, the trial court conducted an outcry hearing outside the jury's presence. The State offered five potential outcry witnesses, Meza, Ceballos, D.H., S.J., and Davila. Meza testified that she was a school nurse at B.H.'s middle school in June 2021, when B.H. came to her office complaining of an anxiety attack. B.H. told Meza that her "step-grandfather" "touched [her] on her upper and lower regions when she was around nine or ten years old." B.H. gestured to her breast and "lower private area," and Meza understood B.H.'s statement to mean that B.H. had been "sexually abused." Meza believed she was the first person B.H. reported these allegations to. Meza referred B.H. to Cabellos, the school counselor, who spoke to B.H. later that same day.

9

Cabellos testified that B.H. "disclosed that she had been touched in the upper and lower levels, over her clothing, when she was nine to ten years old." B.H. identified her abuser as her "grandmother's husband" and said the abuse occurred "more than ten times" during a period that lasted approximately "a year."

D.H. denied that B.H. made any statements to her about being sexually abused and was summarily excused from the hearing.

S.J. testified that in 2018 or 2019, P.P. told her that Espinoza had touched her "butt" and "breast" over her clothes. She said that P.P. later reported a separate incident where Espinoza exposed his penis to P.P.

Davila, the last witness called at the hearing, conducted B.H.'s forensic interview in August of 2021, and B.H. reported that Espinoza touched "her chest, bottom, and middle part area" over her clothing "multiple" times. Davila also interviewed P.P., who reported that Espinoza touched "her chest and middle part, and she also made an outcry of [Espinoza] making her touch his middle part."

Espinoza raised three objections during the hearing: (1) Meza and S.J. should be the only outcry witnesses because they were the first adults to whom the children made their outcries; (2) Davila could not testify as an outcry witness for P.P. because P.P. was fifteen years old when she gave her statement to Davila; and (3) to the extent that P.P. made additional allegations of sexual abuse to Davila, P.P. made the same additional allegations to a "CPS worker" a month prior to the interview with Davila, making that person the "correct outcry" witness. The trial court found that Meza and S.J. were proper outcry witnesses for B.H. and P.P., respectively, and that Davila was a proper outcry

10

witness for both children because they disclosed additional allegations of sexual abuse to Davila that were not reported to the other witnesses, including the unnamed "CPS worker." The trial court also held that the outcry statute only required the statement to be made while the complainant was a "child," and because P.P. gave her statement to Davila when she was fifteen, Davila was a proper outcry witness.

The three witnesses subsequently testified at trial, and their testimony largely tracked their testimony during the outcry hearing.

## B. Standard of Review & Applicable Law

Hearsay is an out of court statement offered at trial for the truth of the matter asserted in the statement. TEX. R. EVID. 801(d). Hearsay is generally inadmissible unless an exception applies. *Id.* R. 802. "Article 38.072 of the Texas Code of Criminal Procedure, the outcry statute, is a hearsay exception statutorily limited to live testimony of the outcry witness." *Bays v. State*, 396 S.W.3d 580, 581 (Tex. Crim. App. 2013). An outcry witness is "the first person, 18 years of age or older, other than the defendant, to whom the child made a statement about the offense." TEX. CODE CRIM. PROC. art. 38.072, § 2(a)(3). Stated differently, the outcry witness is "the first adult a child confides in regarding the abuse." *Martinez v. State*, 178 S.W.3d 806, 811 (Tex. Crim. App. 2005).

Before admitting outcry testimony, the trial court must hold a hearing outside the presence of the jury to determine if the hearsay statement is "reliable based on the time, content, and circumstances of the statement." TEX. CODE CRIM. PROC. art. 38.072, § 2(b)(2). To qualify for the exception, "[t]he statement must be more than words which give a general allusion that something in the area of child abuse is going on; it must be

11

made in some discernable manner and is event-specific rather than person-specific." *Lopez v. State*, 343 S.W.3d 137, 140 (Tex. Crim. App. 2011) (citation modified). Hearsay testimony from more than one outcry witness may be admissible under Article 38.072 so long as each of the witnesses testifies to a different instance of sexual abuse. TEX. CODE CRIM. PROC. art. 38.072, § 2(a-1)(2); *Lopez*, 343 S.W.3d at 140. "The testimony of a second outcry witness is not admissible, however, when the witness merely provides additional details regarding the same instance of sexual abuse." *Rodriguez v. State*, 689 S.W.3d 386, 392 (Tex. App.—Corpus Christi–Edinburg 2024, pet. ref'd); *Brown v. State*, 189 S.W.3d 382, 387 (Tex. App.—Texarkana 2006, pet. ref'd) ("[B]efore more than one outcry witness may testify, it must be determined the outcry concerned different events and was not simply a repetition of the same event told to different individuals.").

As a condition of admissibility, the State must notify the defendant of its intent to offer outcry testimony at least fourteen days prior to trial, and the notice must identify the name of the witness and provide a written summary of the outcry statement. TEX. CODE CRIM. PROC. art. 38.072, § 2(b)(1); *Martinez*, 178 S.W.3d at 811 ("The State must provide adequate pretrial notice to the defendant of its intent to introduce the child outcry statement, and it must provide the name of the outcry witness and a summary of the hearsay statement.").

"A trial court has broad discretion in determining the admissibility of outcry statements pursuant to this statute, and the trial court's exercise of that discretion will not be disturbed on appeal unless a clear abuse of discretion is established by the record." *Marquez v. State*, 165 S.W.3d 741, 746 (Tex. App.—San Antonio 2005, pet. ref'd). A trial

12

court abuses its discretion if it acts arbitrarily or unreasonably, without reference to any guiding rules or principles. *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019).

The erroneous admission of a hearsay statement constitutes nonconstitutional error that must be disregarded unless the error affects the appellant's substantial rights. *Barshaw v. State*, 342 S.W.3d 91, 93 (Tex. Crim. App. 2011); *see* TEX. R. APP. P. 44.2(b). A substantial right is one that has a substantial and injurious effect or influence in determining the jury's verdict. *Rich v. State*, 160 S.W.3d 575, 577 (Tex. Crim. App. 2005). An appellate court should not overturn a criminal conviction for nonconstitutional error "if the appellate court, *after examining the record as a whol*e, has fair assurance that the error did not influence the jury, or influenced the jury only slightly." *Barshaw*, 342 S.W.3d at 93 (quoting *Schutz v. State*, 63 S.W.3d 442, 444 (Tex. Crim. App. 2001)). In assessing the likelihood that the jury's decision was adversely affected, the appellate court should consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, and the character of the alleged error and how it might be considered in connection with other evidence in the case. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). "In cases involving the improper admission of outcry testimony, the error is harmless when the victim testifies in court to the same or similar statements that were improperly admitted or other evidence setting forth the same facts is admitted without objection." *Gibson v. State*, 595 S.W.3d 321, 327 (Tex. App.—Austin 2020, no pet.) (collecting cases).

## C.     Timely Disclosure Complaint Forfeited

Espinoza first argues that the trial court erred by allowing Meza and Davila to testify

as outcry witnesses for B.H. and by allowing S.J. to testify as an outcry witness for P.P. because the State failed to timely disclose them as outcry witnesses under Article 38.072. *See* TEX. CODE CRIM. PROC. art. 38.072, § 2(b)(1)(A). The State confesses error but argues the erroneous admission of this evidence was harmless.

Regardless of whether the State's disclosure was untimely with respect to these witnesses, we have found no record of Espinoza objecting to their outcry testimony on these grounds. To preserve error for appellate review, "an issue on appeal must comport with the objection made at trial." *Walker v. State*, 469 S.W.3d 204, 210 (Tex. App.—Tyler 2015, pet. ref'd) (first citing *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012); and then citing *Rezac v. State*, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990)); *see* TEX. R. APP. P. 33.1(a). Accordingly, Espinoza has forfeited his third issue. *See Walker*, 469 S.W.3d at 210; TEX. R. APP. P. 33.1(a).

## D.    P.P. Was Still a "Child" When She Outcried to Davila

Espinoza next argues that the trial court erred in permitting Davila to testify as an outcry witness for P.P. because, although P.P. was younger than fourteen when the alleged abuse occurred, she was fifteen when she made her outcry to Davila.

Espinoza's complaint is a matter of statutory construction that we review de novo. *See Cary v. State*, 507 S.W.3d 750, 756 (Tex. Crim. App. 2016). The relevant version of Article 38.072[2] "applies to a proceeding in the prosecution of [certain offenses, including continuous sexual abuse of a young child and indecency with a child], if committed against

---

[2] We are citing the version of Article 38.072 that was in effect when Espinoza allegedly committed the offenses and P.P. made her outcry to Davila. *See* Act of April 7, 2011, 82nd Leg., R.S., ch. 1, § 2.07, sec. 1, 2011 Tex. Gen. Laws 1, 5 (amended 2023, 2025) (current version at TEX. CODE CRIM. PROC. art. 38.072 § 1).

14

a child younger than 14 years of age." TEX. CODE CRIM. PROC. art. 38.072, § 1. The statute then defines an outcry witness as "the first person, 18 years of age or older, other than the defendant, to whom *the child* made a statement about the offense." *Id.* art. 38.072, § 2(a)(3) (emphasis added). Invoking the "presumption of statutory consistency," *State v. Villa*, 707 S.W.3d 263, 266–67 (Tex. Crim. App. 2024) ("A word or phrase that is used within a single statute generally bears the same meaning throughout that statute." (quoting *Ex parte Keller*, 173 S.W.3d 492, 498 (Tex. Crim. App. 2005))), Espinoza contends that the phrase "child younger than 14 years of age" in section 1 informs the meaning of the term "child" under section 2(a)(3). In his view, it would be inconsistent to give "child" its ordinary meaning under section 2(a)(3) when the outcry statute only applies to sexual offenses "committed against a child younger than 14 years age." Espinoza concludes that for an outcry statement to be admissible, both the offense and the outcry must occur before the child turns fourteen.

Espinoza acknowledges that several of our sister courts have reached the opposite conclusion, but he urges us to chart a new path. *See Olvera v. State*, 694 S.W.3d 843, 846–47 (Tex. App.—Houston [14th Dist.] 2024, no pet.) (rejecting a similar argument and concluding "that an outcry witness may be designated when the child declarant is younger than eighteen years of age at the time of the outcry"); *Gutierrez v. State*, 630 S.W.3d 270, 278 (Tex. App.—Eastland 2020, pet. ref'd) (same); *Harvey v. State*, 123 S.W.3d 623, 629 (Tex. App.—Texarkana 2003, pet. ref'd) (same); *see also Olivera v. State*, No. 05-08-00527-CR, 2009 WL 3740781, at *7 (Tex. App.—Dallas Nov. 10, 2009, pet. ref'd) (not designated for publication) (same). The through line between these cases is the

15

conclusion that Article 38.072 does not expressly define "child" so the term should be given its ordinary meaning under section 2(a)(3)—that is, someone who has not reached the age of majority. *See* TEX. CODE CRIM. PROC. art. 3.01 ("All words, phrases and terms used in this Code are to be taken and understood in their usual acceptation in common language, except where specially defined."); *Child*, Black's Law Dictionary (12th ed. 2024) ("An unemancipated person under the age of majority.").

Espinoza has not persuaded us that these cases were wrongly decided. "Article 38.072 is a rule of evidence admissibility" with well-defined guardrails. *Martinez*, 178 S.W.3d at 810–11 (discussing the various statutory requirements that must be met before an outcry statement is admissible). Espinoza's approach, on the other hand, requires us to infer that the Legislature intended to impose an additional limitation on this hearsay exception that does not appear in the plain text of section 2(a)(3) and has never been recognized by any other court. *See Sommers for Alabama & Dunlavy, Ltd. v. Sandcastle Homes, Inc.*, 521 S.W.3d 749, 754 (Tex. 2017) (directing appellate courts to "analyze a statute as a cohesive, contextual whole, accepting that lawmaker-authors chose their words carefully, both in what they included and in what they excluded"). In other words, had the Legislature intended to further limit outcry statements to only those made by "the child, *while younger than 14 years of age*," it could have easily said so. We join those courts in concluding that an outcry witness may be designated when the child declarant is younger than eighteen years of age at the time of the outcry.

Because P.P. was fifteen years old when she made her outcry to Davila, she was a "child" for purposes of section 2(a)(3). *See Olvera*, 694 S.W.3d at 846–47; *Gutierrez*,

16

630 S.W.3d at 278; *Harvey*, 123 S.W.3d at 629. Espinoza's fourth issue is overruled.

## E.      Multiple Outcry Witnesses

In his last challenge to the admission of the outcry evidence, Espinoza asserts it was error to allow Davila to testify as an additional outcry witness for both children "without clear evidence that she testified to a distinct incident of abuse for each child." Without citation to the record or elaboration, Espinoza also claims that "Davila's trial testimony established key dates and events" that were not included in B.H.'s or P.P.'s testimony.

Assuming without deciding that it was error to permit Davila to testify as an additional outcry witness for both children, Espinoza has not demonstrated reversible error because the children testified to the same acts of sexual abuse in greater detail than Davila. *See Gibson*, 595 S.W.3d at 327; *Lewis v. State*, 693 S.W.3d 453, 468 (Tex. App.—Houston [14th Dist.] 2023, pet. ref'd) (concluding that "any error in the admission of testimony from Detective Ibarra, Bourgoyne, Dr. Crowson, and Fields-Frazier about Fiona's out-of-court statements confirming that she had been sexually abused was harmless, because Fiona, Mother, and Dr. Isaac testified about the sexual abuse in much greater detail"). Additionally, there is nothing in the record to support Espinoza's claim that Davila's testimony "established key dates." In fact, Davila did not provide any testimony about the duration element of the continuous offense. Instead, as explained above, B.H.'s testimony alone was legally sufficient to establish the duration element of Count I, and there was ample evidence in the record establishing that each complainant was a "child" at the time of the offenses. Espinoza's fifth issue is overruled.

17

## V.     EXTRANEOUS OFFENSES

By his sixth issue, Espinoza complains that the trial court erred by admitting certain evidence of his extraneous offenses and bad acts during the guilt/innocence phase of trial because the State failed to comply with the notice provision of Rule 404(b)(2). *See* TEX. R. EVID. 404(b)(2).

### A.     Relevant Facts

On October 5, 2022, citing Rule 404(b), Espinoza served the State with a request to provide timely notice of "its intent to introduce evidence in its case in chief of any other crimes, wrongs, or acts allegedly committed by [Espinoza], other than those alleged in the Indictment." Trial began on the morning of Monday, March 18, 2024. The State served Espinoza with its original notice "pursuant to Rule 404(b)" the preceding Friday at 3:57 p.m. As relevant here, the State disclosed for the first time that it intended to introduce evidence of the following events:

5. Some time after the alleged abuse occurred when she was 7 or 8, PP was taken to the doctor by her mother, and [Espinoza] drove them. While PP was at the doctor, [Espinoza] left the car and walked away from the doctor's office. PP and her mother had to find someone to come get them and take the car, as PP's mother could not drive.

6. Later, PP says that [Espinoza] told her in private that the reason he left them at the doctor was he was afraid they were going to find something on her while she was being checked.

7. PP says that [Espinoza] would promise her money, and sometimes give her money after the alleged abusive acts.[3]

---

[3] The first three items in the notice were unindicted acts of sexual abuse Espinoza allegedly committed against P.P., including that he would "move her underwear out of the way and rub his [bare] penis against her private part." These extraneous offenses fall outside the parameters of Rule 404 and are subject to their own mandatory disclosure requirement. *See* TEX. CODE CRIM. PROC. art. 38.37, § 3 (requiring the State to provide notice "not later than the 30th day before the date of the defendant's trial"). Espinoza does not argue on appeal that the State failed to timely disclose these extraneous offenses. The

The following Monday, between 10:10 a.m. and 10:28 a.m., the trial court heard several pretrial matters, including Espinoza's objection that the State's original notice was untimely under Rule 404(b)(2). Espinoza explained that he requested notice in 2022, that the State's notice less than seventy-two hours before trial was presumptively unreasonable under caselaw, and, therefore, these untimely disclosed extraneous offenses or bad acts should be "excluded." The State responded that P.P. disclosed the information for the first time during an interview the previous Friday and that the State immediately filed its notice. Espinoza retorted that the State's subjective intent is irrelevant under Rule 404(b)(2) because the disclosure requirement is designed to ensure adequate notice to the defendant. The trial court ultimately deemed the evidence admissible because the allegations were being made by one of the complainants, and the jury is "either going to believe that this [sexual abuse] happened or they're not going to believe that it happened."

At 10:18 a.m., while the parties were arguing about the timeliness of the original notice, the State filed an amended notice "pursuant to Rule 404(b)" that included an additional allegation: "After sexually abusing PP when she was 7 or 8 years old, [Espinoza] would masturbate and ejaculate 'sperm' onto the floor." We have found no record of Espinoza objecting to the amended notice, and P.P. later testified to these facts without objection.

---

fourth item concerned an act of sexual abuse alleged in the indictment—that "Espinoza would take PP's hand and make her touch his penis over the underwear"—so it is unclear why the State disclosed this allegation as an "extraneous offense."

19

**B.     Standard of Review & Applicable Law**

"Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." TEX. R. EVID. 404(b)(1). However, such "evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* R. 404(b)(2). When a defendant makes "a timely request" for disclosure in a criminal case, as occurred here, "the prosecutor must provide reasonable notice before trial that the prosecution intends to introduce such evidence—other than that arising in the same transaction—in its case-in-chief." *Id.* The "spirit" of the reasonable notice requirement is to provide the defendant with an adequate opportunity "to prepare to defend against the extraneous offense evidence." *Parker v. State*, 727 S.W.3d 38, 65 (Tex. Crim. App. 2025), *cert. filed*, 727 S.W.3d 38. "Since the notice requirement of Rule 404(b) is a rule of evidence admissibility, then it is error to admit Rule 404(b) evidence when the State has not complied with the notice provision of Rule 404(b)." *Hernandez v. State*, 176 S.W.3d 821, 824 (Tex. Crim. App. 2005); *Francis v. State*, 445 S.W.3d 307, 315 (Tex. App.—Houston [1st Dist.] 2013), *aff'd*, 428 S.W.3d 850 (Tex. Crim. App. 2014). Courts have found that notice provided within three days of trial is unreasonable. *See Neuman v. State*, 951 S.W.2d 538, 540 (Tex. App.—Austin 1997, no pet.) (morning of jury selection); *Hernandez v. State*, 914 S.W.2d 226, 234 (Tex. App.—Waco 1996, no pet.) (three days before trial).

**C.     Error Preservation**

As a preliminary matter, relying on *Duff-Smith v. State*, 685 S.W.2d 26, 33 (Tex.

Crim. App. 1985), the State contends that, although Espinoza objected to the admission of the evidence based on a lack of adequate notice, he ultimately forfeited error by failing to also request a continuance. This is so, according to the State, because a continuance is "the proper remedy" when a defendant claims that an untimely disclosure prejudiced his ability to prepare a defense.

The State's reliance on *Duff-Smith* is misplaced. In that case, the Texas Court of Criminal Appeals held that the appellant failed to preserve error because "the proper procedure when alleging surprise due to violation of a trial court's order for discovery is to object *or* ask for a postponement or continuance of the trial." *Id.* (emphasis added) (collecting cases). Thus, in a somewhat analogous context, a defendant is not required to object to the admission of the evidence *and* request a continuance; either one will suffice to preserve error. *Id.*

Further, in *Hernandez v. State*, the seminal case on Rule 404(b)'s notice provision, the Texas Court of Criminal Appeals reached the merits of the issue after the "[a]ppellant complained during his capital murder trial that the prosecution did not provide him with adequate notice of its intent to use various extraneous offenses that appellant committed." 176 S.W.3d at 822. Nothing in the opinion suggests that the appellant requested a continuance, or that doing so was a necessary additional step to preserve error. *See id.* at 822–26. The *Hernandez* Court did explain that, rather than excluding the complained-of evidence, a trial court may exercise its discretionary authority to fashion a remedy that will "permit the State to bring itself in compliance with the notice provision of Rule 404(b)," including "granting a continuance to reduce surprise" *Id.* at 824. But the *Hernandez* Court

21

did not say, either expressly or implicitly, that the defendant bears any responsibility for crafting a solution for the State's untimely notice. *See id.* In sum, as the proponent of the untimely noticed extraneous evidence, it may befit the State to suggest a curative measure like a continuance, but we are aware of no authority requiring Espinoza to both object to the admission of the evidence and request a continuance to preserve error.

Espinoza's objection to the original notice comported with general preservation requirements. He objected to the admission of the evidence during a pretrial hearing, he explained the specific basis for his objection, and the trial court expressly ruled on his objection. *See* TEX. R. APP. P. 33.1(a). We conclude that Espinoza preserved his complaint about the timeliness of the State's original notice under Rule 404(b).

However, as alluded to above, Espinoza failed to preserve error with respect to the timeliness of the amended notice. Espinoza's objection was specific to the timeliness of the original notice. Although Espinoza was presumably unaware that the State filed an amended notice with an additional extraneous offense during the pretrial hearing, the record indicates that he was served with a copy of the latter notice, and yet he never brought it to the trial court's attention or objected when P.P. testified about Espinoza masturbating in front of her. Therefore, albeit for a different reason, we agree with the State that Espinoza failed to preserve error with respect to this particular extraneous offense. *See id.*

D.      **Abuse of Discretion**

The State concedes that its original notice was "untimely" and that if Espinoza did preserve error, the trial court "abused its discretion in admitting" the complained-of

22

evidence.[4] Although significant, we cannot blindly accept the State's confession of error. *See Estrada v. State*, 313 S.W.3d 274, 286 (Tex. Crim. App. 2010). "This Court must still independently examine the error confessed because our judgments are precedents, and the proper administration of the criminal law cannot be left merely to the stipulation of parties." *Id.* (citation modified).

The trial court's explanation for admitting the extraneous evidence missed the mark. While we agree with the court's observation that the outcome of the trial would ultimately turn on the jury's assessment of the complainants' credibility, "it is error to admit Rule 404(b) evidence when the State has not complied with the notice provision of Rule 404(b)." *Hernandez*, 176 S.W.3d at 824. As the high court recently reiterated, "the purpose of Rule 404(b) is to prevent surprise," *Parker*, 727 S.W.3d at 65, and we concur with the State that its original notice of previously undisclosed bad acts less than seventy-two hours before trial was "untimely" in this case. *See Neuman*, 951 S.W.2d at 540; *Hernandez*, 914 S.W.2d at 234.

## E.   Harmless Error

Espinoza contends that the admission of these "bad acts surely had a substantial impact on the jury." He further claims, "The evidence provided an alleged mental state consistent with the crimes. It also imputed a motive to influence its secrecy. The evidence

---

[4] The State has not invoked any exception to Rule 404(b)'s notice requirements. For instance, the State does not argue that any of the disclosed evidence actually constituted same-transaction contextual evidence. *See* TEX. R. EVID. 404(b)(2) (requiring disclosure of extraneous offense evidence "other than that arising in the same transaction"); *see also Davis v. State*, No. 01-16-00917-CR, 2017 WL 6001217, at *5 (Tex. App.—Houston [1st Dist.] Dec. 5, 2017, no pet.) ("Because this evidence arose out of the same transaction as the charged offenses, the State was not required to provide pretrial notice of this evidence to appellant under Rule 404(b)(2)."). Because we do not have the benefit of briefing on this topic and it does not otherwise affect our disposition, we assume without deciding that the complained-of evidence was subject to disclosure under Rule 404(b)(2).

is unique in that it provided the jurors with alleged actions by [Espinoza] to which they c[ould] infer guilt." The State acknowledges that this evidence was inculpatory but maintains that adding it to the evidentiary mix was harmless.

To begin, the State notified Espinoza that P.P., not B.H., would testify that Espinoza "would promise her money, and sometimes give her money after the alleged abusive acts." Naturally, then, Espinoza's pretrial objection sought to prevent P.P. from testifying to these allegations. But at trial, B.H., who testified before P.P., said the same thing happened to her, and Espinoza failed to object to this testimony on any grounds, including that the State never disclosed this similar but distinct extraneous offense. Because "the improper admission of evidence is harmless if the same or similar evidence is admitted without objection at another point in the trial," we conclude the erroneous admission of P.P.'s testimony with respect to this bad act was harmless. *Tharp v. State*, 714 S.W.3d 118, 140 (Tex. App.—Austin 2024, no pet.) (citing *Estrada v. State*, 313 S.W.3d 274, 302 n.29 (Tex. Crim. App. 2010)).

That leaves P.P.'s testimony that Espinoza abandoned her and her mother at the doctor's office when she had an infection in her "private part." According to P.P., Espinoza later admitted that he left because he "thought they were going to find something" during her examination. The children's combined testimony spans approximately 100 pages of the reporter's record, while this particular testimony, including Espinoza's additional objections and the trial court's rulings, was elicited over three pages. During closing arguments, the State briefly mentioned that Espinoza told P.P. that he left "because he's afraid to get caught." The State then suggested that Espinoza leaving the doctor's office

24

indicated a "consciousness of guilt," but the State spent the bulk of its closing responding to defensive theories about fabrication and lack of opportunity.

We have observed that evidence showing "a consciousness of guilt may be one of the strongest indicators of guilt." *Jones v. State*, 722 S.W.3d 317, 324 (Tex. App.—Corpus Christi–Edinburg 2025, no pet.) (citation modified). However, having examined the entire record, including P.P.'s and B.H.'s direct and detailed testimony that Espinoza sexually abused them, other properly admitted evidence corroborating their accounts, the nature of the complained-of evidence in relation to this other evidence of guilt, and the State's limited emphasis on the inadmissible evidence, we hold that this additional evidence from which the jury could infer Espinoza's guilt "did not influence the jury, or influenced the jury only slightly." *Barshaw*, 342 S.W.3d at 93. Espinoza's sixth issue is overruled.

### VI.    MEDICAL RECORDS

Espinoza next complains that the trial court erred in overruling his "*Crawford* and improper bolstering objections to B.H.['s] and P.P.'s medical records provided by their respective SANE nurses."

### A.    Relevant Facts

Laura Dominguez conducted P.P.'s SANE exam. After the State attempted to qualify her as an expert witness, Espinoza took her on voir dire, asked her to describe the "scientific literature" or "theory" she would rely on to form her opinions, and ultimately objected that she was not qualified to testify as an expert under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). The trial court carried the objection "until we get there" and permitted her to testify.

25

Dominguez explained that during a SANE exam, patients are asked to provide a narrative of their "medical history" (i.e., a description of the alleged abuse), which the SANE records verbatim in the patient's medical records. Without objection, Dominguez read P.P.'s medical history out loud for the jury, which included allegations that Espinoza touched her vagina with his penis over the clothes and that Espinoza also touched her breasts over the clothes. Later, when the State asked Dominguez whether her "findings from the examination" were consistent with P.P.'s medical history, Espinoza objected again on *Daubert* grounds, the trial court directed the State to rephrase the question, and Dominguez testified without further objection that she found nothing inconsistent between P.P.'s exam and her medical history. After Dominguez had been excused as a witness, the State moved to admit P.P.'s medical records into evidence because "there was a business record affidavit filed since 2022." Espinoza object that "[t]he witness had already left and they didn't put it into evidence." The trial court overruled the objection, stating, "It doesn't matter. They filed it two weeks in advance, you didn't file your objection to it, therefore, it's automatically admitted."

Genette Spear conducted B.H.'s SANE exam, and she testified immediately after Dominguez. Espinoza did not object to her qualifications as an expert, but when the State attempted to introduce B.H.'s medical records from the exam, he objected "under *Crawford* . . . and as bolstering under 608." (Emphasis added). He explained that his *Crawford* objection was based on Dominguez's prior testimony that portions of the report are not "created by the SANE nurse." The State responded that Spear would only testify "to the part that's her report." The trial court overruled the objection because the medical

26

records had "been on file for the requisite number of days required by law." Afterwards, Spear read B.H.'s medical history out loud for the jury, which included allegations that Espinoza touched B.H.'s vagina and beasts over the clothes.

## B.    Applicable Law

Upon a proper showing, a party may introduce business records that contain hearsay. *See* TEX. R. EVID. 803(6); *Thomas v. State*, 226 S.W.3d 697, 705 (Tex. App.—Corpus Christi–Edinburg 2007, pet. dism'd) (explaining the predicate for the introduction of business records under Rule 803(6) "requires proof (1) that the record was made by or from information transmitted by a person with personal knowledge of the events or conditions recorded, (2) that the record was made at or near the time of the events or conditions recorded, and (3) that it was in the ordinary course of the reporting entity's business to make and keep such records"). "When a business receives information from a person who is outside the business and who has no business duty to report or to report accurately, those statements are not covered by the business records exception." *Garcia v. State*, 126 S.W.3d 921, 926 (Tex. Crim. App. 2004) (hearsay statements alleging physical abuse not admissible under Rule 803(6)). Instead, "[t]hose statements must independently qualify for admission under their own hearsay exception—such as statements made for medical diagnosis or treatment." *Id.* Under Rule 803(4), a hearsay statement is admissible if the statement "(A) is made for—and is reasonably pertinent to—medical diagnosis or treatment; and (B) describes medical history; past or present symptoms or sensations; their inception; or their general cause." TEX. R. EVID. 803(4). "This includes showing that a statement from a child-declarant revealing the identity of

27

the perpetrator of sexual abuse is pertinent." *Taylor v. State*, 268 S.W.3d 571, 591 (Tex. Crim. App. 2008) (relevant factors include how long ago the abuse occurred and whether there is an existing threat because the perpetrator is "a family or household member").

## C. Analysis

The State concedes that the trial court admitted the complainants' medical records on an improper basis. The State argues, instead, that the records were otherwise admissible under Rule 803(4). *See Zavala v. State*, 401 S.W.3d 171, 176 (Tex. App.— Houston [14th Dist.] 2011, pet. ref'd) ("An appellate court must uphold a trial court's evidentiary rulings if they are reasonably supported by the record and correct on any applicable theory of law." (citing *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002))). We find it unnecessary to reach the State's alternative theory of admissibility.

First, Espinoza's appellate arguments concerning the admissibility of P.P.'s medical records do not comport with his trial objections. His only objection to this evidence was that "[t]he witness had already left and they didn't put it into evidence." Consequently, this sub-issue is forfeited. *See Walker*, 469 S.W.3d at 210; TEX. R. APP. P. 33.1(a). Additionally, by the time Espinoza objected to the admission of P.P.'s medical records, Dominguez had already read P.P.'s narrative into the record without objection. Thus, Espinoza cannot show that the admission of P.P.'s medical records was harmful. *See Tharp*, 714 S.W.3d at 140.

Turning to Espinoza's objections to B.H.'s medical records, we fail to see how *Crawford* applies in this case. *Crawford* concerns the Confrontation Clause and the admissibility of an out-of-court statement made by an unavailable witness. *Crawford v.*

28

*Washington*, 541 U.S. 36, 38 (2004). In this case, however, both B.H. and Spear testified and were subject to cross-examination. *See Crawford v. State*, 139 S.W.3d 462, 465 (Tex. App.—Dallas 2004, pet. ref'd) (explaining that in light of *Crawford v. Washington*, the Confrontation Clause "simply does not apply when the declarant was available to, and did, testify at trial and was subject to cross-examination"). Thus, *Crawford* is inapplicable here. *See id.*

Likewise, Espinoza has not explained how the medical records constitute improper bolstering. He has not cited a single rule, statute, or case in his brief to support his contention. *See* Tex. R. App. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."). He merely concludes that the trial court's explanation was "an improper reason to deny [his] *Crawford* and improper bolstering objections." We hold that Espinoza forfeited this sub-issue due to inadequate briefing. *See Wolfe v. State*, 509 S.W.3d 325, 343 (Tex. Crim. App. 2017) (collecting cases on deficient briefing and explaining that "an appellate court is not required to make an appellant's arguments" on his behalf). Espinoza's seventh issue is overruled.

## VII.   COMMENTING ON COMPLAINANTS' CREDIBILITY

In his eighth issue, Espinoza argues that the trial court improperly admitted "testimony from [Dominguez and Spear] that directly commented on the credibility of child witnesses B.H. and P.P., in violation of Texas Rule of Evidence 702's prohibition on expert testimony about witness truthfulness." Each SANE testified that they did not find any inconsistencies between the relevant complainant's medical history and exam, and

29

according to Espinoza, this was improper opinion testimony as to the truthfulness of P.P. and B.H.

Rule 702 provides that a qualified expert "may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." TEX. R. EVID. 702. However, "expert testimony that a particular witness is truthful is inadmissible under Rule 702." *Yount v. State*, 872 S.W.2d 706, 711 (Tex. Crim. App. 1993).

We agree with the State that Espinoza has not preserved this complaint. When the State asked Dominguez whether her findings from the exam were consistent with P.P.'s medical history, Espinoza re-urged his objection that the State failed to establish Dominguez as an expert under *Daubert*. Whether a witness qualifies as an expert in a particular field is a different legal question than whether an otherwise qualified expert is allowed to give a specific type of opinion. *See* TEX. R. APP. P. 33.1(a)(1)(A) (preserving error for appellate review requires an objection to be made "with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context"); *Pena v. State*, 353 S.W.3d 797, 807 (Tex. Crim. App. 2011) (explaining that an objection must be clear enough to afford the court an opportunity to address and correct the alleged error). Because Espinoza's argument on appeal does not comport with his trial objection, this sub-issue is forfeited. *See Tharp*, 714 S.W.3d at 140.

When the State posed the same question to Spear with respect to B.H., Espinoza did not object on any grounds. Accordingly, this sub-issue was not preserved for review. *See Saldano v. State*, 70 S.W.3d 873, 889 (Tex. Crim. App. 2002) ("We have consistently

held that the failure to object in a timely and specific manner during trial forfeits complaints about the admissibility of evidence." (collecting cases)); TEX. R. APP. P. 33.1(a)(1). Espinoza's eighth issue is overruled.

## VIII.   CUMULATIVE ERROR DOCTRINE

Finally, Espinoza argues that even if each evidentiary error was alone harmless, the cumulative effect of those errors was harmful because he was deprived "of a fair trial."

"The doctrine of cumulative error provides that the cumulative effect of several errors can, in the aggregate, constitute reversible error, even though no single instance of error would." *Schmidt v. State*, 612 S.W.3d 359, 372 (Tex. App.—Houston [1st Dist.] 2019, pet. ref'd). The mere existence of multiple errors, however, does not warrant reversal unless they operated in concert to undermine the fundamental fairness of the proceedings. *Estrada v. Smith*, 313 S.W.3d 274, 311 (Tex. Crim. App. 2010); *Rodriguez v. State*, 553 S.W.3d 733, 752 (Tex. App.—Amarillo 2018, no pet.). Non-errors and alleged errors not preserved for review are excluded from consideration. *Schmidt*, 612 S.W.3d at 372; *see Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999) ("[W]e are aware of no authority holding that non-errors may in their cumulative effect cause error.").

We have overruled most of Espinoza's alleged errors with respect to the admission of evidence because either there was no error or the alleged error was not preserved. Having considered the three errors we deemed harmless, we conclude Espinoza has failed to show that such alleged cumulative error prejudiced his defense to the point that there is a probability the result would have been different but for the three errors or that

31

the errors so "fatally infected the trial that they violated the trial's fundamental fairness." *See Estrada*, 313 S.W.3d at 311 (citation modified) (quoting *United States v. Bell*, 367 F.3d 452, 471 (5th Cir. 2004)); *Lumsden v. State*, 564 S.W.3d 858, 899 (Tex. App.—Fort Worth 2018, pet. ref'd) ("Even considering the evidentiary errors we deemed harmless— admitting the video of the forensic interview, admitting the testimony about Lumsden's tampering with government records, and sustaining the State's 'nonresponsive' objections to Lumsden's testimony—we do not believe that the cumulative effect of the admission of this evidence requires reversal."); *see also Banda v. State*, No. 13-19-00587-CR, 2021 WL 2006325, at *23 & n.14 (Tex. App.—Corpus Christi–Edinburg May 20, 2021, pet. ref'd) (mem. op., not designated for publication) (finding no cumulative error after assuming the "the trial court abused its discretion (1) in permitting Detective Delgado to testify to his observation of T.B.'s demeanor during her recorded forensic interview and (2) admitting J.M.'s testimony regarding Banda's pornography consumption"); *Seery v. State*, No. 12-11-00095-CR, 2013 WL 683327, at *16 (Tex. App.—Tyler Feb. 21, 2013, pet. ref'd) (mem. op., not designated for publication) (finding no cumulative error where the court "identified two instances of error—admission of Appellant's military record and [the complainant's] hearsay statements to her mother"). Espinoza has not shown the evidentiary errors "synergistically achieve the critical mass necessary to cast a shadow upon the integrity of the verdict." *Linney v. State*, 413 S.W.3d 766, 767 (Tex. Crim. App. 2013) (Cochran, J., concurring) (explaining the doctrine of cumulative error). Espinoza's ninth issue is overruled.

## IX. CONCLUSION

Espinoza's judgment of conviction is affirmed.

JENNY CRON
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
23rd day of April, 2026.